182 F.3d 1077 (9th Cir. 1999)
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
ROBERT VANDOREN, a/k/a Bob, a/k/a Robert VanDoren, Defendant-Appellant.
 No. 97-50629
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued January 5, 1999 Pasadena, California
Submitted March 5, 1999
Filed July 7, 1999
 
 [Copyrighted Material Omitted]
 Casey Donovan, San Diego, California, for the defendant- appellant.
 Laura H. Parsky and Nicola T. Hanna, Assistant United States Attorneys, San Diego, California, for the plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California Marilyn L. Huff, District Judge, Presiding.
 Before: Donald P. Lay,[1] Mary M. Schroeder, and Cynthia Holcomb Hall, Circuit Judges.
 OPINION
 SCHROEDER, Circuit Judge:
 
 
 1
 Robert Van Doren appeals from his guilty plea to one count of conspiracy to distribute cocaine base (i.e. crack cocaine) and several counts of possession and distribution of cocaine base. 21 U.S.C. SS 841(a)(1) and 846. Van Doren was sentenced to the mandatory minimum 20 years imprisonment and 10 years supervised release after the government filed a sentencing enhancement information based on a prior California state court drug conviction. He challenges the voluntariness of his plea because the district court did not directly ask whether he had been threatened. He also challenges the use of the prior California conviction, claiming that the resulting imposition of the mandatory minimum was the product of vindictive prosecution following his earlier refusal to plead guilty. We have jurisdiction pursuant to 28 U.S.C. S 1291 and we affirm.
 
 FACTS
 
 2
 Robert Van Doren is a 70-year old man with prostate cancer who was arrested on May 31, 1996 after police observed him engage in a transaction to buy crack cocaine. Law enforcement authorities had advance notice of this deal based on conversations overheard between Van Doren and Derrick Darnell Hines through a wiretap of Hines' telephone. The police seized approximately 48 grams of crack that agents said Van Doren had thrown to the ground. A search of Van Doren's house turned up 15.8 additional grams of crack. About two weeks before his arrest, Van Doren also had sold approximately 1.2 grams of crack cocaine to an undercover officer in a videotaped transaction. The Pre-sentencing Report concluded, and the district court accepted, that Van Doren was responsible for at least 65.05 grams of crack cocaine.
 
 
 3
 Van Doren previously had been convicted of a felony drug charge in California state court, arising out of a drug transaction in May 1995. Following his indictment on the federal charges, the government sent a written plea offer to Van Doren offering to forego filing a sentencing enhancement based on the state conviction if he chose to plead guilty. The government later additionally offered to recommend a sentence close to ten years. Van Doren rejected the government's offers. On December 17, 1996, the government advised Van Doren that all plea offers would be revoked if not accepted by December 19, 1996. Van Doren again rejected the offers. On December 23, 1996, the government filed an information with the district court seeking the sentencing enhancement.
 
 
 4
 On January 7, 1997, with the jury waiting in the hallway Van Doren decided to plead guilty to all charges, without admitting quantities of the crack involved. At that time, thecourt engaged Van Doren in a plea allocution pursuant to Fed. R. Crim. P. 11, after which the court accepted the guilty plea. The district court held four sentencing hearings at which it received documentary evidence and heard testimony. On November 14, 1997, the district court found that Van Doren was accountable for an amount of crack cocaine in excess of 50 grams. As a result, the court sentenced Van Doren to 20 years imprisonment, the mandatory minimum sentence after application of the sentencing enhancement. The district court denied for lack of jurisdiction Van Doren's later motion to withdraw his plea, because the case was on appeal.
 
 DISCUSSION
 A. Plea Allocution Issues
 1. Voluntariness of the Guilty Plea
 
 5
 Van Doren contends that the district court violated Fed. R. Crim. P. 11(d) because it did not specifically ask Van Doren whether his plea was the result of force or threats. Although Van Doren never indicated during the Rule 11 col- loquy that his plea was coerced, he argues on appeal that he received threats from his co-defendants that induced his plea. Rule 11(d) instructs that the district court
 
 
 6
 shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats . . . . Fed. R. Crim. P. 11(d). We review de novo whether the dis- trict court's colloquy with the defendant satisfies the require- ents of Rule 11. See United States v. Odedo, 154 F.3d 937, 940 (9th Cir. 1998). Moreover, our review is limited to the record of the plea proceeding at issue. Id.
 
 
 7
 The transcript shows that the district court did not spe- cifically ask Van Doren whether his plea was the result of coercion by force or threats. Thus, the district court did not strictly comply with the requirements of Rule 11(d). Prior to the enactment of Fed. R. Crim. P. 11(h), such noncompliance would have required reversal. See McCarthy v. United States, 394 U.S. 459, 468-69 (1969). Under the present rule, harmless error analysis is appropriate:
 
 
 8
 Harmless Error. Any variance from the procedures required by this rule which does not affect substan- tial rights shall be disregarded.
 
 
 9
 Fed. R. Crim. P. 11(h).
 
 
 10
 The government contends that the district court's failure to address the issue of force or threats was harmless because the court repeatedly questioned Van Doren on whether his plea was voluntary. The government's argument finds support in the Advisory Notes on Rule 11(h), which state that Rule 11 "is not to be read as requiring a litany or other ritual which can be carried out only by word-for-word adherence to a set `script.' " Fed. R. Crim. P. Rule 11(h), Advisory Notes for 1983 Amendment.
 
 
 11
 The government points to six separate times in the colloquy where the district court inquired into the voluntariness of Van Doren's plea. The following dialogue provides an example:
 
 
 12
 THE COURT: Are you pleading guilty freely and voluntarily?
 
 
 13
 VAN DOREN: Yes, I am.
 
 
 14
 THE COURT: You understand that the sentence is up to the Court to determine?
 
 
 15
 VAN DOREN: Yes, I understand that.
 
 
 16
 At one point in the allocution though, Van Doren's response sounded defensive, because he asked the court why he needed a reason to plead guilty. This response prompted the district court to question whether Van Doren was pleading guilty to protect other people. Van Doren denied that he was protecting anyone and there is no evidence in the record to support Van Doren's claim that he was pressured by his co- defendants to plead guilty. Moreover, Judge Huff was in the best position to observe Van Doren's demeanor during the plea allocution. The district court satisfied Rule 11(d) by ask- ing Van Doren several times whether he was, in fact, guilty of the crimes charged and whether he was pleading freely and voluntarily.
 
 2. Notice of Mandatory Minimum Sentence
 
 17
 Van Doren also argues that the district court failed to ensure that he fully understood the minimum mandatory sen- tence that he faced by pleading guilty. Rule 11(c)(1) requires that the district court "determine that the defendant under- stands . . . the mandatory minimum penalty provided by law." Fed. R. Crim. P. 11(c)(1). Van Doren does not deny that the court and the government stated numerous times that he would be subject to a 20-year mandatory minimum if the gov- ernment proved at sentencing that Van Doren had possessed at least 50 grams of crack. Rather, Van Doren asserts that it is unclear from the transcript whether he fully understood the consequences of his plea because the colloquy was periodi- cally interrupted by defense counsel and the prosecution.
 
 
 18
 Despite the input from the attorneys, the court several times asked Van Doren directly about his understanding of the possible sentence. The following discussion is illustrative:
 
 
 19
 THE COURT: [Y]ou could be facing a very long sentence, up to the maximum. Do you understand that?
 
 
 20
 VAN DOREN: Yes.
 
 
 21
 THE PROSECUTOR: With a 20-year mandatory minimum.
 
 
 22
 THE COURT: You understand that?
 
 
 23
 VAN DOREN: Yes.
 
 
 24
 In questioning the voluntariness of Van Doren's plea, the court also engaged in the following exchange with the defendant about his sentence:
 
 
 25
 THE COURT: . . . when we get to the sentencing date, and if the Court then at the point of sentencing takes a look at the positions of the parties and decides that a 20-year mandatory minimum is what the Court is required to give you, that could end up being a life sentence for you.
 
 
 26
 VAN DOREN: I understand that, your Honor.
 
 
 27
 THE COURT: And at that point you can't then look back and say, "Oh, I wish I would have spent three, four, five, ten days going to trial," because some- thing might have happened at trial that could convince the jury not to convict you.
 
 
 28
 VAN DOREN: Your Honor, yes. I understand that, your Honor. I did something wrong. I broke the law. I admitted it and I'm willing to pay the price.
 
 
 29
 Van Doren points out that he was not in good health at the time of the plea colloquy and that this impaired his ability to understand clearly the consequences of his plea as it related to the mandatory minimum sentence. The district court specifically addressed this concern and satisfied itself that Van Doren understood the consequences of his plea:
 
 
 30
 THE COURT: Now, you've said that you're tired. We know from previous hearings that you have a medical problem. You don't think that's coloring your judgment here today?
 
 
 31
 VAN DOREN: No, I don't think so, your Honor.
 
 
 32
 THE PROSECUTOR: Your Honor, could the Court inquire if the Defendant has had any medication or other drugs? THE COURT: Have you taken any medication in the last 24 hours?
 
 
 33
 VAN DOREN: No.
 
 
 34
 This is not a case where the defendant was misinformed about the mandatory minimum sentence nor where the government sought to hide the consequences of the sentencing enhancement. See United States v. Toothman, 137 F.3d 1393, 1400 (9th Cir. 1998). A review of the transcript shows that the district court satisfied the requirements of Rule 11(c)(1) on the issue of the mandatory minimum sentence.
 
 B. Vindictive Prosecution
 
 35
 Van Doren argues that the government's refusal to withdraw the sentencing enhancement after he pled guilty to all charges against him constituted vindictive prosecution, a violation of his due process rights. Vindictive prosecution occurs when a prosecutor "brings additional charges solely to punish the defendant for exercising a constitutional or statutoryright," such as a criminal defendant's right to a jury trial. United States v. Noushfar, 78 F.3d 1442, 1446 (9th Cir. 1996).
 
 
 36
 The sentencing enhancement applied to Van Doren pursuant to 21 U.S.C. S 841(b)(1)(A) constitutes an "additional charge" that may form the basis for a claim of vindictive prosecution. See United States v. Cooks, 52 F.3d 101, 105-06 (5th Cir. 1995) (considering a vindictive prosecution claim when government filed a S 841(b) sentencing enhancement); see also Bordenkircher v. Hayes, 434 U.S. 357, 358-59 (1978)(permitting prosecutor to threaten defendant with additional charge under recidivist statute if defendant did not plead guilty). Van Doren has presented no evidence, however, demonstrating actual vindictiveness by the prosecution when it filed the sentencing enhancement. Van Doren nevertheless maintains that he established a presumptive "appearance of vindictiveness" because the enhancement was filed after Van Doren exercised his constitutional right to proceed to trial rather than accept the prosecution's plea bargain. Consequently, Van Doren argues that the burden shifted to the pros- ecution to show that the enhancement was not motivated by vindictiveness, and of course he contends that the prosecution failed to meet its burden. See United States v. Shaw, 655 F.2d 168, 171 (9th Cir. 1981).
 
 
 37
 Van Doren's reasoning is misplaced in light of the Supreme Court's decision in United States v. Goodwin, 457 U.S. 368 (1982). In Goodwin, the Court held that a prosecutor's decision to file additional charges against a defendant after the defendant has refused to plead guilty does not give rise to a presumption of vindictive prosecution. Id. at 382-83. Accordingly, the Ninth Circuit has recognized that during plea negotiations "prosecutors may threaten additional charges and carry through on this threat," Noushfar, 78 F.3d at 1446, and that the filing of additional charges after a defendant refuses to plead guilty does not raise a presumption of vindictiveness. Id. (citing Goodwin, 457 U.S. at 380-81). Therefore, Van Doren fails to raise a presumption of vindictive prosecution on the basis of the government's decision to file the sentencing enhancement after Van Doren refused to enter into a plea agreement.
 
 
 38
 Although the government did not engage in vindictive pros- ecution at the time it filed the enhancement, Van Doren alter- natively contends that the prosecution became vindictive when the government insisted on proceeding with the enhancement after he pled guilty. He attempts to distinguish Bordenkircher and Goodwin, because in those cases the defendant proceeded to trial after refusing to enter into a plea bargain. Here, on the other hand, Van Doren subsequently pled guilty and did not exercise his right to a jury trial. By insisting on the sentencing enhancement after the guilty plea, Van Doren contends that the government sought to punish him for refusing to reach an earlier plea agreement.
 
 
 39
 The government aptly responds that Van Doren's "real claim is that he is not now able to get the benefit of the plea offers he so regularly rejected." We agree that if these facts constitute vindictive prosecution, any defendant could under- mine the government's threat to file additional charges simply by pleading guilty after the government has carried out its threat. As a result, the government would be unduly restricted in its discretion to negotiate pleas in a manner approved by the Supreme Court in Bordenkircher and Goodwin. The government's ability to remain firm that an offer is "off the table" must be respected. The government's refusal to withdraw the sentencing enhancement under these circumstances does not create a presumption of vindictive prosecution.
 
 
 40
 C. Use of the State Conviction for Enhancement
 
 
 41
 In his opening brief on appeal, Van Doren argued that the California stateconviction used to enhance his sentence was part of the same conspiracy for which he was charged in this case. Thus, he claimed that it could not properly be used as a basis for the S 841(b)(1)(A) sentencing enhancement.This proposition is without merit because this court has held "that the federal and state charges derive in part from the same activity does not preclude using the state convictions to enhance the federal sentence." United States v. Baker, 10 F.3d 1374, 1420 (9th Cir. 1993).
 
 
 42
 We deferred submission to give the parties an opportunity to provide supplemental briefing on whether the California conviction was "final" for purposes of the S 841(b)(1)(A) enhancement provision. We now conclude that Van Doren waived his right to challenge the finality of the state court conviction because he did not raise the issue in the district court, as required by statute. "If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information." 21 U.S.C. S 851(c)(1). The statute also explains the consequences when a defendant does not dispute the enhancement in the district court: "Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause is shown for failure to make a timely challenge." Id. S 851(c)(2).
 
 
 43
 Van Doren filed a response to the government's information in the district court pursuant to S 851, but he did not challenge the "finality" of the California conviction. He has offered no reason why he did not raise this issue in the district court, so we must deem it waived. See United States v. French, 974 F.2d 687, 696-97 (6th Cir. 1992).
 
 D. The Mandatory Minimum
 
 44
 Van Doren contends that the district court erred by not granting downward reductions for his limited role in the offense and for acceptance of responsibility. The government responds that Van Doren is not entitled to any downward adjustments because he received the mandatory minimum sentence under 21 U.S.C. S 841(b)(1)(A). The government is correct because a "district court does not have the discretion to consider mitigating factors and cannot apply the downward departures of the Sentencing Guidelines to reduce a sentence below the minimum mandated by Congress." United States v. Harris, 154 F.3d 1082, 1084 (9th Cir. 1998); see U.S.S.G. S 5G1.1(b). U.S.S.G. S 5G1.1(b) provides: "Where a statutorily required minimum sentence is greater than the maxi- mum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."
 
 
 45
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.