UNITED STATES of America,
Plaintiff–Appellee,

v.

Heather Ladon OLAFSON,
Defendant–Appellant.

No. 99–50216.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 6, 2000[1]

Filed Feb. 3, 2000

Amended May 22, 2000

1. The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a)(2).

**436**

Charles T. McCutcheon, El Cajon, California, for the defendant-appellant.

David P. Curnow, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: HALL, TROTT, and W. FLETCHER, Circuit Judges.

## ORDER

TROTT, Circuit Judge:

The opinion filed February 3, 2000 [203 F.3d 560], is hereby amended as follows:

At slip opinion page 1166, first full paragraph [203 F.3d at 567], delete the following text on line 10:

"Moreover, the burden of proof in a Rule 15(a) motion rests with the movant to demonstrate the necessity of preserving a prospective witness's testimony with a deposition. *United States v. Zuno–Arce*, 44 F.3d 1420, 1424 (9th Cir. 1995)."

The word "Finally" shall be stricken from the next sentence, and the sentence shall read:

"In deciding whether to grant a Rule 15(a) motion, the district court must consider, among other factors, whether the deponent would be available at the proposed location for deposition and would be willing to testify. *Id.* at 1425."

At slip opinion page 1166, line 6 of the last full paragraph [203 F.3d at 567] insert between "discretion" and "in refusing":

in concluding that the government met its burden of proving "unavailability" and

At slip opinion pages 1166 and 1167 [203 F.3d at 567], delete the following:

"Olafson did not meet her burden of demonstrating the necessity of taking the deposition, nor did she provide any explanation as to what evidence would be gained or clarified by obtaining further testimony from Gomez–Rivera. Finally,"

The next sentence shall begin with the word "Moreover,". The text shall read:

"Moreover, there was no indication that either Gomez–Rivera or Chavez–Martinez were willing to provide testimony at a deposition, or that they would cooperate in any way. The evidence in the record was to the contrary."

At slip opinion page 1167, line 10 [203 F.3d at 567]: place a period at the end of the word "limine," and delete the following:

"and her request for foreign depositions under Federal Rule of Criminal Procedure 15(a)."

At slip opinion 1167, first full paragraph, line 10 [203 F.3d at 567], delete the following:

"The district court determined that a deposition was not necessary, and that the statement of Gomez–Rivera was reliable for the limited purpose for which it was to be used. This was not an abuse of discretion."

At slip opinion 1167, first full paragraph, line 10 [203 F.3d at 567], the following shall be inserted:

"The district court determined that it was not reasonable to require the government to take the deposition of Gomez–Rivera, and that his statement was reliable for the limited purpose for which it was to be used. This was not an abuse of discretion."

With these amendments, the petition for rehearing, and the petition for rehearing en banc are DENIED.

## OPINION

Heather Ladon Olafson ("Olafson") appeals her conviction for transporting illegal aliens in violation of 8 U.S.C. § 1324. Olafson entered a conditional guilty plea to the charge, which preserved her right to appeal the district court's denial of a motion to suppress, as well as its decision to admit hearsay statements from two material witnesses instead of ordering the government to take their depositions under Federal Rule of Criminal Procedure 15(a).

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we **AFFIRM**.

## I

Olafson was arrested on August 4, 1998 in Jamul, California when Border Patrol Agent Johnson ("Agent Johnson") found six illegal aliens on the floor of a blue minivan Olafson was driving. The facts leading up to Olafson's arrest are as follows:

On the morning of August 4, 1998, Border Patrol Agent Lawrence Jay ("Agent Jay") was on "line-watch" duty near the United States/Mexico border when he was notified by a seismic device of a possible intrusion in the Deerhorn Valley area of East San Diego County. Agent Jay responded to the area and found fresh footprints on a main trail used by illegal aliens to enter the United States. He followed the footprints. From previous arrests, and from the fact that the particular trail led in only one direction, Agent Jay knew the footprints were headed toward 20855 Cinnamon Drive. Agent Jay also knew that Cinnamon Drive was an area where many illegal aliens stopped "to rest and drink water ... and wait for their load vehicles."

As Agent Jay approached 20855 Cinnamon Drive, he heard people saying in Spanish, "hurry up, hurry up," and heard car doors slamming. He also saw that the trail of footprints he had been following shifted toward the driveway, and he believed "that some sort of loading was occurring." As he approached the top of a hill overlooking the area, Agent Jay saw a gold Chevrolet Blazer driving away from the 20855 Cinnamon Drive residence. He did not see any other vehicles leave. Agent Jay immediately notified Agent Johnson about what he had seen.

Agent Johnson was patrolling the area in a marked vehicle when he received Agent Jay's call regarding the activity on Cinnamon Drive. Agent Johnson knew the 20855 Cinnamon Drive location well, having personally tracked "ten or so" groups of aliens to the residence. Specifically, he participated in three alien smuggling apprehensions at the address and received several citizen tips about similar illegal activity going on at the home. In addition, Agent Johnson had seen the gold Blazer and a small, blue minivan parked on the property for months.

Agent Johnson set up surveillance on the gold Blazer at Four Corners, a nearby intersection. The Blazer arrived at the intersection after about ten minutes and, in front of it, separated by one other vehicle, was the blue minivan driven by Olafson. From his previous observations of the blue minivan parked at 20855 Cinnamon Drive, Agent Johnson connected it to the Blazer. He also testified that as the minivan drove along the road and negotiated a dip, it appeared heavily loaded. Believing that the minivan contained illegal aliens, he instructed another Border Patrol agent to stop and check the van. When the minivan was stopped, six illegal aliens were found lying on the floor. Olafson was arrested. Agent Johnson stopped the gold Blazer, which did not contain any illegal aliens, and arrested the driver, Celeste Arnold.

Of the six aliens seized from the minivan driven by Olafson, four were immediately returned to Mexico. The remaining two, Amadeo Chavez–Martinez and Cerilio Gomez–Rivera, were detained as material witnesses and both gave statements to the Border Patrol that they were Mexican citizens and had entered the United States illegally. Before Olafson's trial, however, Chavez–Martinez and Gomez–Rivera were inadvertently returned to Mexico by the United States Border Patrol.

Prior to trial, Olafson brought a motion to suppress all evidence from the vehicle stop on the ground that the Border Patrol agents lacked reasonable suspicion. Olafson also brought a motion in limine to exclude any use of the statements regarding Chavez–Martinez's and Gomez–Riv-

era's citizenship and alienage as inadmissible hearsay and requested that the court order the government to take their depositions because neither witness would be present at trial. The district court denied both motions as well as the request for depositions.

Following these adverse district court rulings, Olafson entered a conditional guilty plea to count three of the indictment for transporting illegal aliens within the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II). The plea preserved Olafson's right to appeal the district court's denial of both her motion to suppress and her motion in limine, including the related request for depositions.

## II

Olafson contends that the district court erred by denying her motion to suppress evidence seized as a result of the investigatory stop because the Border Patrol agents lacked reasonable suspicion to stop the blue minivan she was driving. This contention lacks merit.

■ The specific question of whether reasonable suspicion existed under given facts is a legal conclusion subject to de novo review. *See Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). However, we "review findings of historical fact only for clear error and ... give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

■ The Fourth Amendment prohibits an officer from stopping a vehicle without a reasonable or well-founded suspicion of criminal conduct at the time of the stop. *United States v. Rodriguez,* 976 F.2d 592, 594 (9th Cir.1992), *as amended,* 997 F.2d 1306 (9th Cir.1993). Reasonable suspicion exists when an officer is aware of specific, articulable facts, which, together with objective and reasonable inferences, form a basis for suspecting that the particular person to be detained has committed or is about to commit a crime. *United States v. Salinas,* 940 F.2d 392, 394 (9th Cir.1991). The facts are to be interpreted in light of a trained officer's experience, and the totality of the circumstances must be taken into account. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

The Supreme Court has set forth a nonexclusive list of factors upon which Border Patrol agents may rely in finding reasonable suspicion: "(1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver, including 'obvious attempts to evade officers'; (6) appearance or behavior of passengers; (7) model and appearance of the vehicle; and, (8) officer experience." *United States v. Garcia–Barron,* 116 F.3d 1305, 1307 (9th Cir.1997) (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)).

■ Here, after a pre-trial evidentiary hearing, the district court denied Olafson's motion and concluded that, based upon the totality of the circumstances, the Border Patrol agents had ample reasonable suspicion to stop Olafson's minivan. In addition, the court noted that it was "quite a strong case." The district court was correct. The testimony from Agent Jay and Agent Johnson was sufficient, under the factors set out in *Garcia–Barron,* to conclude that the agents had reasonable suspicion to stop the minivan.

Specifically, the following facts were available to the district court in making its determination: (1) Agent Jay was assigned to line-watch duties in Jamul, California, an area in close proximity to the Mexican border; (2) after a sensor was set off during Agent Jay's watch, he found fresh footprints on a trail notoriously traveled by alien smugglers; (3) Agent Jay followed the footprints to 20855 Cinnamon Drive, an area previously involved in alien smuggling activity; (4) when Agent Jay arrived

at the 20855 Cinnamon Drive, he heard someone say "hurry up, hurry up," in Spanish; (5) Agent Jay heard vehicle doors slamming and saw a gold Chevrolet Blazer drive away from the house on Cinnamon Drive; (6) Agent Johnson recognized the Chevrolet Blazer and the blue minivan as being connected with the house on 20855 Cinnamon Drive and had seen the blue minivan parked in the driveway on the property for extended periods of time over the previous three to four months; (7) based upon Agent Johnson's experience and special training as a Border Patrol Agent, he believed that the gold Blazer and blue minivan were traveling together in tandem; and finally, (8) Agent Johnson observed that the minivan appeared to be weighted down from the way it handled a dip in the road.

When analyzed as a whole, these specific and articulable facts provided ample support for the Border Patrol agents' suspicion that the minivan driven by Olafson contained illegal aliens. The agents' general experience with the Cinnamon Drive location and their specific knowledge of the two vehicles provided compelling evidence that there was criminal activity underway.

Olafson argues that the district court erred because it should not have relied upon certain evidence from the pre-trial hearing in determining whether the agents had reasonable suspicion. For example, Olafson argues that the court should not have relied upon Agent Jay's testimony that the minivan looked "loaded" or heavy, because a minivan is the type of vehicle normally used to carry loads and, thus, no suspicion can be raised from its apparent weight. See United States v. Garcia–Camacho, 53 F.3d 244, 249 (9th Cir.1995) (acknowledging that the heavily laden nature of a truck is less suspicious because, unlike a passenger car, one of the normal uses of a truck is to transport heavy materials). Olafson also argues that Agent Jay's testimony that he saw the gold Blazer pull away from 20855 Cinnamon drive cannot be used to support suspicions about

the minivan because Agent Jay did not see the minivan pull away with the Blazer and had never seen it involved in any illegal activity.

Olafson's arguments are unpersuasive because reasonable suspicion is based upon the totality of the circumstances. See Sokolow, 490 U.S. at 8, 109 S.Ct. 1581. Hence, even assuming some doubt existed as to Agent Johnson's belief that the minivan looked loaded, when viewed in light of the other evidence available, it was relevant to determine whether the Border Patrol agents were reasonable in suspecting that the blue minivan driven by Olafson contained illegal aliens. Similarly, any question raised by the fact that Agent Jay saw only the Blazer drive away was cured by Agent Johnson's testimony that he saw the blue minivan parked at 20855 Cinnamon Drive for several months. This testimony was sufficient to connect the vehicles.

Under the totality of the circumstances, in light of all the evidence available to Agent Johnson at the time he ordered the stop of Olafson's minivan, his suspicion that the van contained illegal aliens was reasonable. The district court's conclusion was well-supported by the evidence, and Olafson's motion to suppress was properly denied.

### III

■ Olafson's second claim on appeal challenges the district court's denial of her motion in limine to exclude the hearsay statements of Chavez–Martinez and Gomez–Rivera. The district court denied the motion because it found that, under Federal Rule of Evidence 804(a), the government had made a showing of unavailability of these two witnesses sufficient to permit admission of their statements regarding citizenship and alienage. Olafson contends that the district court erred in its finding of unavailability by declining to consider alternative means of procuring testimony from the witnesses and, specifically, by not ordering depositions under Federal Rule of Criminal Procedure 15(a). We disagree.

■ Whether the district court correctly construed the hearsay rule is a question of law that we review de novo. *United States v. Collicott*, 92 F.3d 973, 978 (9th Cir.1996). We review a district court's decision to admit evidence under a hearsay exception and its decision to grant or deny a deposition under Federal Rule of Criminal Procedure 15(a) for abuse of discretion. *Id.; see also United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1569 (9th Cir.1989).

## A.

■ The parties do not dispute that the statements of Chavez–Martinez and Gomez–Rivera would be hearsay if offered at trial. Therefore, to be admissible, the statements must fit within one of the hearsay exceptions of Federal Rule of Evidence 804. Under Rule 804(b)(3) and (4), hearsay is admissible if the declarant is unavailable *and* the statement is against the declarant's interest or concerns the declarant's personal or family history. Fed.R.Evid. 804(b)(3), (4). Under these two hearsay exceptions, a declarant is considered unavailable as a witness if he is absent from the hearing, and the proponent of his statement has been unable to procure his attendance or testimony by process or other reasonable means. Fed. R.Evid. 804(a)(5). Finally, while "a witness is not [considered] 'unavailable' unless the prosecutor makes a good faith effort to obtain the witness's presence .... '[t]he law does not require the doing of a futile act,' and the extent of the effort the prosecutor must make is a question of reasonableness." *United States v. Winn*, 767 F.2d 527, 530 (9th Cir.1985) (quoting *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

We discussed the unavailability of a witness and the admission of hearsay statements pursuant to Rule 804(b)(3) and (4) in *Winn*, a similar, but not identical, case to the one presented here. *Winn*, 767 F.2d at 530. In *Winn*, where the material witness was involuntarily deported and his whereabouts were completely unknown, the court held that he was unavailable and his statement to immigration officers regarding his citizenship and alienage was, therefore, admissible under the hearsay exceptions for statements against interest and statements of personal or family history. *Id.* The *Winn* court also held that the admission of the hearsay statement did not violate the defendant's confrontation rights under the Sixth Amendment, because the statement had certain indicia of reliability given the circumstances under which it was made. *Id.* at 531. In response to the defendant's argument that the statement was unreliable because the witness may have lied, the *Winn* court noted that when four males who do not speak English are found locked in the trunk at the San Clemente border, "it is highly unlikely that they are legally in the United States ... posing as illegal aliens to avoid prosecution for illegally smuggling other aliens." *Id.* at 530–31.

Here, the district court concluded that under *Winn*, Chavez–Martinez and Gomez–Rivera were unavailable because they were inadvertently returned to Mexico, were beyond the subpoena power of the district court, and failed to respond to efforts to persuade them to return to the United States to testify. Specifically, the court relied on testimony from Agent Montes of the United States Border Patrol, who stated that he spoke with Gomez–Rivera on the telephone and requested that he return to the United States to testify. Although Agent Montes repeatedly promised Gomez–Rivera that he would be safe, Gomez–Rivera refused to come back. He stated that he was afraid of being incarcerated again or being harmed by Olafson's husband. Chavez–Martinez was not contacted directly by agents for the United States Border Patrol.[2]

**2.** It was not necessary for the government to use the statement of Chavez–Martinez if it could prove its case using only Gomez–Rivera. Therefore, although the record is not

Additionally, the court concluded that under the rationale described in *Winn,* the hearsay statements were reliable. Similar to *Winn,* Gomez–Rivera and Chavez–Martinez were found lying on the floor of the minivan and made statements that they were citizens of Mexico immediately upon contact with law enforcement. There is no evidence to suggest that the men were lying. Moreover, their return to Mexico and Gomez–Rivera's unwillingness to come back to the United States only lends further support to the reliability of their statements.

Accordingly, because both the unavailability and reliability prongs of *Winn* were met, the district court concluded that the statement of Gomez–Rivera's citizenship and alienage was admissible under Federal Rule of Evidence 804 and denied Olafson's motion in limine. The district court's conclusion was consistent with *Winn,* was well-reasoned and, thus, was not an abuse of discretion.

### B.

Olafson argues that *Winn* is distinguishable because the material witness at issue in that case could not be located, whereas here, the government knew the whereabouts of at least one of the witnesses and communicated with him via telephone. As such, Olafson argues, irrespective of the government's good faith efforts to procure the witness's attendance in court, the witness should not be deemed "unavailable" unless there was also an attempt to procure his *testimony,* as required by Federal Rule of Evidence 804(a)(5).[3] To this end, Olafson asked the district court to invoke Federal Rule of Criminal Procedure 15(a) to order the government to take the depositions of the two otherwise unavailable witnesses. The district court denied the request.

 Rule 15(a) allows the district court broad discretion in deciding whether to order depositions in a criminal case and explicitly states that such depositions will be reserved for "exceptional circumstances [where] it is in the interest of justice that the testimony of a prospective witness ... be taken and preserved for use at trial...." Fed.R.Crim.P. 15(a); *see also United States v. Hernandez–Escarsega,* 886 F.2d at 1569 ("[T]he facts of each case must be separately considered to determine whether the exceptional circumstances contemplated by Rule 15(a) exist...."). In deciding whether to grant a Rule 15(a) motion, the district court must consider, among other factors, whether the deponent would be available at the proposed location for deposition and would be willing to testify. *Id.* at 1425. The court should also consider whether the safety of United States officials would be compromised by going to the foreign location. *United States v. Omene,* 143 F.3d 1167, 1169–70 (9th Cir.1998).

Olafson is correct that the Border Patrol's communication with Gomez–Rivera distinguishes her case from *Winn,* which would otherwise be directly on point. However, because Rule 804(a)(5) requires only reasonable means to procure testimony, the district court did not abuse its discretion in concluding that the government met its burden of proving "unavailability" and in refusing to order the taking of foreign depositions in Mexico under Federal Rule of Criminal Procedure 15(a). The district court considered the factors outlined above and explicitly noted that conditions in Mexico were unsafe for American prosecutors, and that the circumstances of the case did not require

---

clear as to whether the government attempted to contact Chavez–Martinez, we do not need to resolve this issue to decide Olafson's appeal.

**3.** As noted, under the two hearsay exceptions at issue in this case, a declarant is considered unavailable as a witness if he is absent from the hearing, and the proponent of his statement has been unable to procure his attendance or *testimony* by process or other reasonable means. Fed.R.Evid. 804(a)(5) (emphasis added).

such measures. Moreover, there was no indication that either Gomez–Rivera or Chavez–Martinez were willing to provide testimony at a deposition, or that they would cooperate in any way. The evidence in the record was to the contrary.

Given the inherent reliability of Gomez–Rivera's statement of his citizenship and alienage, and, absent extreme measures, his unavailability to testify at trial or any other time, we hold that the district court correctly exercised its discretion in denying Olafson's motion in limine. While perhaps, as suggested by Olafson, the district court might have ordered a phone deposition, which would have avoided safety concerns and other administrative problems, the district court was not required to do so. The district court determined that it was not reasonable to require the government to take the deposition of Gomez–Rivera, and that his statement was reliable for the limited purpose for which it was to be used. This was not an abuse of discretion.

## IV

For the reasons outlined above, we **AFFIRM** Olafson's conviction for transporting illegal aliens in violation of 8 U.S.C. § 1324. The district court correctly denied Olafson's motion to suppress. The district court also correctly denied Olafson's motion in limine to exclude the hearsay statement of Gomez–Rivera and her request to take foreign depositions under Federal Rule of Criminal Procedure 15(a).