**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Anthony HERNANDEZ–HERRERA,**
**Defendant–Appellant.**

**No. 00–50458.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2001

Filed Dec. 12, 2001

Gerald Singleton, Federal Defenders of San Diego, San Diego, California, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, San Diego, California, Bruce Castetter, Assistant United States Attorney, San Diego, and John Chung, Special Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: RYMER and RAWLINSON, Circuit Judges, and POGUE,* Judge.

Opinion by Judge RAWLINSON: Dissent by Judge POGUE.

* Honorable Donald C. Pogue, Judge, Court of International Trade, sitting by designation.

RAWLINSON, Circuit Judge:

Anthony Hernandez–Herrera ("Herrera") appeals his conviction for being a deported alien "found in" the United States in violation of 8 U.S.C. § 1326. Herrera also appeals pre-trial, jury selection, and evidentiary rulings, and the sentence imposed. Because the district court committed no errors, we affirm Herrera's conviction and sentence.

## BACKGROUND AND PROCEEDINGS

On July 24, 1999, a "still watch" agent observed a group of suspected illegal aliens scaling the international border fence separating Mexico from the United States. The "still watch" agent alerted field agents so they could apprehend the suspects. Among the field agents who responded to the call was Agent George Syer ("Agent Syer"). When Agent Syer arrived at the location of the suspects, nine of them were already in custody. Two of the suspects, one of whom was Herrera, escaped into a patch of thick brush. While the suspects were in the brush, the "still watch" agent could no longer observe them. Unfortunately for Herrera, he fled into an area from which there was no escape. The brush was so thick Herrera could not travel through it, and by the time Agent Syer reached him, Herrera had already turned around.

Originally, as the result of negotiations, the government filed an information charging Herrera with attempted illegal entry in violation of 8 U.S.C. § 1325. However, at the guilty plea hearing, Herrera's counsel requested a competency evaluation. Consequently, Herrera did not plead guilty.

Subsequently, the Government sought and obtained a one count indictment, charging Herrera with a violation of 8 U.S.C. § 1326.[1]

Herrera sought to dismiss the indictment, claiming it resulted from vindictive prosecution. The district court denied the motion on the ground that the § 1326 charge was appropriately filed after Herrera failed to plead guilty. Herrera also filed a motion to exclude the admission of deportation documents contained in the Immigration and Naturalization Service's ("INS") "A file." The district court denied this motion based on our ruling in *United States v. Loyola–Dominguez*, 125 F.3d 1315 (9th Cir.1997).

During jury selection, Herrera's counsel brought a *Batson* challenge based on the Government's use of a peremptory challenge to dismiss a juror with a Hispanic-sounding surname. After the Government pointed out that there were two other jurors with Hispanic surnames on the jury, the district court denied Herrera's *Batson* challenge.

At the close of the Government's case, Herrera moved for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Herrera contended that he never "entered" the United States because he was never free from official restraint. The district court examined the evidence, found that Herrera was not under official restraint, and denied the Rule 29 Motion.

Herrera's counsel interposed an *Apprendi* challenge to the sentencing enhancement based on Herrera's prior felonies.[2]

---

**1.** 8 U.S.C. § 1326 provides in pertinent part: "Any alien who ... has been ... excluded, deported or removed ... and thereafter ... is at any time found in, the United States ... shall be fined ... imprisoned ... or both." The penalties set forth in § 1326 are more severe than those contained in § 1325.

**2.** In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

The district court overruled the objection, and sentenced Herrera to 100 months.

## DISCUSSION

### I. Vindictive Prosecution

■■■ A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right. *United States v. Gamez–Orduno,* 235 F.3d 453, 462 (9th Cir.2000). However,

> [a]lthough prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights violates due process in the pretrial setting as it does at other stages, ... in the context of pretrial plea negotiations vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right.

*Id.* (citations and internal quotation omitted). The standard of review for vindictive prosecution remains unsettled in this circuit. *United States v. Frega,* 179 F.3d 793, 801 (9th Cir.1999), *cert. denied,* 528 U.S. 1191, 120 S.Ct. 1247, 146 L.Ed.2d 105 (2000). We have applied abuse of discretion, clearly erroneous, and *de novo* standards. *Id.* As we have done in the past, we reject Herrera's argument because his claim of prosecutorial vindictiveness fails regardless of which standard is applied.

■■■ As a result of pretrial negotiations, the government charged Herrera with a violation of 8 U.S.C. § 1325. The fact that the prosecution eventually charged Herrera under § 1326, after Herrera refused to plead guilty, does not create a presumption of vindictiveness.[3] We have ruled that during plea negotiations, "prosecutors may threaten additional charges and carry

through on this threat, and that the filing of additional charges after a defendant refuses to plead guilty does not raise a presumption of vindictiveness." *United States v. VanDoren,* 182 F.3d 1077, 1082 (9th Cir.1999) (internal citations omitted). We therefore find the district court did not commit error in denying Herrera's motion to strike the indictment for vindictive prosecution.

### II. Admission of Deportation Documents

■■ Herrera contends the district court improperly allowed the admission of his INS "A-file" into evidence. He argues that his "A-file" constitutes inadmissible hearsay and its admission violated the Confrontation Clause.

■■■ "Whether the district court correctly construed the hearsay rule is a question of law reviewed *de novo*." *United States v. Olafson,* 213 F.3d 435, 441 (9th Cir.2000). We review the admission of evidence under an exception to the hearsay rule for abuse of discretion. *Id.* We review alleged violations of the Confrontation Clause *de novo*. *United States v. Bowman,* 215 F.3d 951, 960 (9th Cir.2000).

The public records exception to the hearsay rule provides:

> The following are not excluded by the hearsay rule, even though the declarant is unavailable as a witness:
>
> (8) Public records and reports.... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report....

Fed.R.Evid. 803(8)(B).

■■■ We have held that deportation documents are admissible to prove alienage under the public records exception to

---

**3.** Herrera asserts that the government filed the indictment because he requested a competency hearing. There is no concrete evidence in the record to support this assertion.

the hearsay rule. *See United States v. Contreras*, 63 F.3d 852, 857 (9th Cir.1995). Accordingly, the district court did not err in admitting the documents to prove Herrera's alienage. Although these documents, standing alone, can not conclusively establish a defendant's alien status, *United States v. Sotelo*, 109 F.3d 1446, 1449 (9th Cir.1997), Herrera is not challenging the sufficiency of the evidence on appeal.

Herrera has similarly failed to show a violation of the Confrontation Clause. The public records exception is a firmly rooted exception to the hearsay rule. *Contreras*, 63 F.3d at 857. The introduction of evidence under a firmly rooted exception to the hearsay rule does not violate the Confrontation Clause. *Id.* Therefore, the district court did not violate the Confrontation Clause by allowing the introduction of deportation documents to prove Herrera's alienage.

### III. *The "Batson" Challenge*

When a defendant alleges that a peremptory challenge was exercised impermissibly, he must first make a prima facie showing that the challenge was race-based. *Cooperwood v. Cambra*, 245 F.3d 1042, 1045 (9th Cir.2001). We review the trial court's ruling on the prima facie issue deferentially, for clear error. *Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir.1999) (en banc); *see also McClain v. Prunty*, 217 F.3d 1209, 1219–20 (9th Cir.2000).

Although striking a single juror on the basis of race may constitute a *Batson* violation, the fact that a single venireman of the defendant's race has been excluded is alone insufficient to establish a prima facie case. *See United States v. Vasquez–Lopez*, 22 F.3d 900, 902 (9th Cir. 1994). We agree with the district court and find Herrera failed to make a prima facie showing that a race-based peremptory challenge was used. During jury selection, Herrera's counsel objected to the removal of Ms. Carvajal on the basis that she was the only juror with a "Hispanic sounding surname." The government responded by pointing out that two other members of the jury also had Hispanic sounding surnames. One member had the surname Susa and another had the surname Sarmiento. On this record, it was not clear error for the district court to find that Ms. Carvajal's removal was for reasons other than race.

### IV. *Motion for Acquittal*

We review the district court's denial of the Rule 29 motion for acquittal *de novo. United States v. Ruiz–Lopez*, 234 F.3d 445, 447–48 (9th Cir.2000). In doing so, we "review the evidence presented against the defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Neill*, 166 F.3d 943, 948 (9th Cir.), *cert denied*, 526 U.S. 1153, 119 S.Ct. 2037, 143 L.Ed.2d 1046 (1999) (citation and internal quotation omitted).

It is undisputed that Herrera traveled from Mexico to the United States without authorization to enter. Whether he actually "entered" the United States upon his arrival is the dispositive question.

Since 1908, federal courts have recognized that "entering" the United States requires more than mere physical presence within the country. *United States v. Pacheco–Medina*, 212 F.3d 1162, 1163–64 (9th Cir.2000). To "enter," an alien must cross the United States border free from official restraint. *Id.* at 1164. An alien is under "official restraint" if, after crossing the border without authorization, he is "deprived of [his] liberty and prevented from going at large within the United States." *Id.* (quoting *Ex parte Chow Chok*, 161 F. 627, 628–29 (N.D.N.Y.),

*aff'd,* 163 F. 1021 (2d Cir.1908)). An alien does not have to be in the physical custody of the authorities to be officially restrained; rather, the concept of official restraint is interpreted broadly. *Ruiz–Lopez,* 234 F.3d at 448. "[T]he restraint may take the form of surveillance, unbeknownst to the alien." *Id.* (quoting Matter of Pierre, 141 I. & N. Dec. 467 (1973)). When under surveillance, the alien "has still not made an entry despite having crossed the border with the intention of evading inspection, because he lacks the freedom to go at large and mix with the population." *Id.* On the other hand, if an alien is not discovered until some time after exercising his free will within the United States, he has entered free from official restraint. *United States v. Martin–Plascencia,* 532 F.2d 1316, 1317 (9th Cir.1976).

For example, in *Pacheco–Medina,* the defendant attempted to re-enter the United States after being deported two days earlier. 212 F.3d at 1163. The aliens were observed via a surveillance camera, while scaling the international border fence separating the United States from Mexico. *Id.* The person monitoring the camera alerted border patrol agents to apprehend the suspects. *Id.* Defendant fled and a border patrol agent gave chase. *Id.* Even though he lost sight of the defendant "for a split second," the agent was able to capture him. *Id.* After explaining the doctrine of official restraint, we reversed the defendant's conviction and found that the defendant did not "enter" the United States. *Id.* at 1165–66. The doctrine is now well established:

> If a government official has an alien *under surveillance* from the moment he passes the port of entry until the moment of arrest, the alien has not "entered" the United States—even if his arrest occurred at a point well past the port of entry—because the alien was under official restraint the whole time.

*Ruiz–Lopez,* 234 F.3d at 448 (emphasis added).

In this case, Herrera was free from official restraint because he was no longer visible to the "still watch" agent once he entered the thick brush. Unlike the situation in *Pacheco–Medina,* the "still watch" agent did not send Agent Syer into the brush. Agent Syer followed Herrera's footprints, and not Herrera. Persistent tracking, rather than visual surveillance, led to Herrera's apprehension. Under these facts, Herrera was not continuously surveilled. Consequently, we agree with the district court that he was not under official restraint. Herrera's motion for acquittal was properly denied.

### V. *Sentencing*

Herrera asserts that the district court improperly enhanced his sentence based on a prior conviction that was not charged in the indictment or proven to the jury. Herrera posits that *Apprendi's* exception for recidivism, which is derived from *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) has been called into doubt. We rejected an identical claim in *United States v. Pacheco–Zepeda,* 234 F.3d 411, 415 (9th Cir.2000), where we held, "unless and until the Supreme Court expressly overrules it, *Almendarez–Torres* controls here."

The district court committed no error in the pre-trial, trial or sentencing phases of this case. Herrera's conviction and sentence are AFFIRMED.

POGUE, Judge United States Court of International Trade, Dissenting:

I believe that this case is controlled by *United States v. Pacheco–Medina,* 212 F.3d 1162 (9th Cir.2000). As the majority opinion notes, Herrera fled into an area from which there was no escape. *See supra* page 1216. He was undisputably "de-

prived of [his] liberty and prevented from going at large within the United States." *United States v. Pacheco–Medina,* at 1164 (quoting *Ex parte Chow Chok,* 161 F. 627, 630 (N.D.N.Y.1908), *aff'd,* 163 F. 1021 (2d Cir.1908)).

The majority opinion attempts to distinguish *Pacheco–Medina* by claiming that "[p]ersistent tracking, rather than visual surveillance, led to Herrera's apprehension," *supra* page 1219, but the testimony was that the defendant was captured fewer than fifty yards from the International Border Fence in the bushes from which there was no escape. (E.R. at 131–134.) In this circumstance, I believe the testimony on "tracking" to be irrelevant.

Accordingly, I dissent.