**Maria Guadalupe AMBRIZ–RIVERA, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 04–76676.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2008.

Filed March 24, 2008.

Dario Aguirre, Esq., Aguirre Law Group A.P.C., San Diego, CA, for Petitioner.

CAS–District Counsel, Office of the District Counsel Department of Homeland Se-

curity, San Diego, CA, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Kristin A. Cabral, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER and N.R. SMITH, Circuit Judges, and KING,* District Judge.

## MEMORANDUM **

Maria Guadalupe Ambriz–Rivera, a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals ("BIA") summarily affirming a decision of an Immigration Judge ("IJ") finding her removable for alien smuggling under 8 U.S.C. § 1227(a)(1)(E)(i). We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we deny the petition.

■ The IJ's decision finding that Ambriz–Rivera was removable for alien smuggling was supported by substantial evidence. *See Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir.2004) (noting that when the BIA affirms the IJ without an opinion pursuant 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision as we would that of the BIA); *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (noting that we review a final order of removal for substantial evidence). Border Patrol and immigration agents testified that they were running a program to apprehend alien smugglers or guides, where agents follow an alien (who has presented false documentation at the U.S.–

Mexico border) until she meets with a smuggler in the United States, and both are apprehended. After Lorena Rodriguez–Salinas presented false documents while crossing the border, three Border Patrol and immigration agents observed her cross the border at San Ysidro and take a northbound trolley to San Diego, wait at a trolley station for approximately 30 minutes while five southbound trolleys passed, suddenly board a southbound trolley on which Ambriz–Rivera was also riding, get off a couple of stops later with Ambriz–Rivera, and walk several blocks with Ambriz–Rivera while the two constantly looked over their shoulders as if they feared they were being followed. As soon as they split up, both were apprehended.

Our conclusion that the IJ's decision is supported by substantial evidence is fortified by the IJ's assessment of the credibility of Ambriz–Rivera's testimony. The IJ, who had the opportunity to view both Ambriz–Rivera and the agents as they testified, noted that her testimony was weak, unreliable, evasive, and inconsistent with the testimony of the officers (even giving her ample opportunity to explain the inconsistencies). *See Singh v. INS*, 134 F.3d 962, 969 n. 14 (9th Cir.1998) (noting that when reviewing a decision for substantial evidence "we may not reweigh the evidence" to make our own determination, but rather, must determine only whether the evidence compels a conclusion contrary to that of the BIA); *Canjura–Flores v. INS*, 784 F.2d 885, 888 (9th Cir.1985) ("The [IJ] is in the best position to make credibility findings because he views the witness as testimony is given.").

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

■ Lastly, the agents' testimony alone supports the IJ's conclusion that Ambriz–Rivera affirmatively aided Rodriguez–Salinas illegally enter the United States. *Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812 (stating that the BIA's factual findings may be reversed only if the evidence compels a different conclusion). We therefore need not determine whether the government made reasonable efforts to secure Rodriguez–Salinas's presence at the hearing or whether admitting Rodriguez–Salinas's interview into evidence violated Ambriz–Rivera's due process rights.

**PETITION FOR REVIEW DENIED.**

B. FLETCHER, Circuit Judge, concurring:

I concur in the majority's disposition. I write separately because of what I consider to be the government's inexcusable failure to make reasonable efforts to secure the presence of Lorena Rodriguez–Salinas at Ambriz–Rivera's deportation hearing in light of its intention to use her testimony by way of affidavit, without providing any opportunity to cross-examine her. Had we found it necessary to resolve whether the IJ erred in admitting into evidence Rodriguez–Salinas's sworn statement, I would have concluded that the IJ erred because the government " 'may not use an affidavit from an absent witness unless [it] first establishes that, despite reasonable efforts, it was unable to secure the presence of the witness at the hearing.' " *Hernandez–Guadarrama v. Ashcroft*, 394 F.3d 674, 681–82 (9th Cir.2005) (quoting *Ocasio v. Ashcroft*, 375 F.3d 105, 107 (1st Cir.2004)).

After arresting her in San Diego on March 5, 2002, immigration agents interviewed Rodriguez–Salinas and obtained a sworn statement in which she admitted her intent to enter the United States with false documents and identified Ambriz–Rivera as her paid smuggler. Subsequently, Rodriguez–Salinas had her fingerprints taken, had her biometric information entered into the IDENT database, and was granted voluntary departure back to Mexico.

On April 25, 2003, the Department of Homeland Security ("DHS") sent a letter to Rodriguez–Salinas's address in Aguascalientes, Mexico, which is located in western central Mexico more than 1,000 miles from San Diego and the Port of Entry at San Ysidro, California.[1] In the letter, DHS "requested" Rodriguez–Salinas's presence at Ambriz–Rivera's hearing in San Diego on August 26, 2003, and stated that she "will be required to testify" in the matter. The letter further stated that Rodriguez–Salinas needed to report to the Port of Entry at San Ysidro, California, on August 26, 2003, by 5:00 a.m., and that she would have to present the letter "for permission to be paroled into the United States for the limited purpose of traveling to the court and back on the date of the hearing." The letter also stated that Rodriguez–Salinas would be required to present identification to the inspector at the border. Finally, the letter stated that Rodriguez–Salinas could telephone the Office of the District Counsel if she had any questions.[2]

The letter failed to assure Rodriguez–Salinas that she would not be detained, fined or prosecuted for having entered the

---

1. Ambriz–Rivera argues on appeal that the government failed to make reasonable efforts to secure Rodriguez–Salinas's presence at her hearing because it mailed the letter to the address contained in the Form I–213 that an immigration officer prepared regarding Rodriguez–Salinas instead of to the allegedly less

vague address provided by Rodriguez–Salinas in her sworn statement. As indicated in the majority's disposition, we do not reach the merits of this argument.

2. The letter's contents were written in both English and Spanish.

United States unlawfully on March 5, 2002. The letter also failed to offer to pay Rodriguez–Salinas's reasonable travel expenses for the journey of over 1,000 miles from Aguascalientes to San Diego. These failures are significant and have been recognized as such in our case law.

First, it is simply a fantasy to expect that a witness who has been arrested, detained, processed and sent back to Mexico by the United States government for unlawfully entering the country with false documentation and with the aid of a paid smuggler would later choose to report back to that government without a promise that she will not face further repercussions for her unlawful entry. Without such a promise, the witness would naturally be terrified to subject herself again to the same authorities that had previously arrested and detained her. We recognized the importance of promising that a witness will be free from further repercussions in *United States v. Olafson*, 213 F.3d 435 (9th Cir.2000), where we upheld the district court's conclusion that an illegal alien who had been returned to Mexico was an "unavailable" witness, and that therefore his hearsay statements were admissible under Federal Rule of Evidence 804(a), partly on the ground that a border patrol agent had repeatedly promised him that he would not be incarcerated again if he returned to the United States to testify. *Id.* at 441.

Second, it is likewise a fantasy to expect that an apparently impecunious witness who relied on relatives to pay for a smuggler to help her enter the United States would pay her own way to travel over 1,000 miles to testify on behalf of the government in her smuggler's deportation hearing. An offer to pay the witness's expense not only would be reasonable, but it also would be necessary to warrant any expectation that the witness would make the required journey in order to testify. Thus, in *United States v. Yida*, 498 F.3d

945 (9th Cir.2007), we agreed with the district court that the government's offer to pay the travel expenses of a witness who had pled guilty to a drug crime and who had been deported back to Israel was "effectively the Government's only legitimate effort to ensure that [the witness] would be present at defendant's re-trial." *Id.* at 960–61.

To be sure, the chance that a removed witness living abroad will choose to return to the United States to testify remains slim even if the government promises that the witness will suffer no further repercussions and offers to pay the witness's reasonable travel expenses. The government drastically reduces the chance that a witness will testify when it decides in the first place to remove the witness from the United States. *See Yida*, 498 F.3d at 957 (holding that the reasonableness of the government's deportation of a witness should be considered in determining whether the witness is "unavailable" to testify under Federal Rule of Evidence 804(a)).

Nevertheless, the chance that a witness will return to the United States to testify would likely be significantly greater if the government were to promise that the witness would be free from further repercussions for her earlier unlawful entry into the United States and any other unlawful actions in this country and were to offer to pay the witness's reasonable travel expenses. To rely on the fantasy that a witness will return to testify simply because she is "requested" to do so is not the reasonable effort to secure the witnesses's presence that due process requires. *See Hernandez–Guadarrama*, 394 F.3d at 681 ("[T]he constitutional and statutory guarantees of due process require that 'the government's choice whether to produce a witness or to use a hearsay statement [not be] wholly unfettered.'") (quoting *Sai-*

*dane v. INS,* 129 F.3d 1063, 1065 (9th Cir.1997) (second alteration in *Hernandez–Guadarrama* )).