**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ralph PENA–GUTIERREZ,**
**Defendant–Appellant.**

**No. 99–50057.**

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 13, 1999\*

Filed Aug. 11, 2000

---

\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Mayra Garcia, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Daniel S. Drosman, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: THOMAS, SILVERMAN, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

Ralph Pena–Gutierrez ("Pena–Gutierrez") seeks reversal of his jury conviction for bringing an illegal alien into the United States, see 8 U.S.C. § 1324(a)(2)(B)(ii), (iii), and transporting illegal aliens within the United States, see id. § 1324(a)(1)(A)(ii). We reject Pena–Gutierrez's argument that the government violated his rights under the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment when it deported an illegal alien whose hearsay statement was admitted at trial, Israel Macias–Limon ("Macias–Limon"), because Pena–Gutierrez failed to demonstrate either bad faith by the government or prejudice to his case. Furthermore, although the district court erred by admitting an INS report, itself inadmissible hearsay, which contained additional inadmissible hearsay in the form of Macias–Limon's out-of-court statement, we find the error was harmless. We also reject Pena–Gutierrez's claims of evidentiary error relating to a diagram of the vehicle Pena–Gutierrez drove to the United States/Mexico border because the diagram and accompanying testimony were both relevant and not unduly prejudicial. Nor did the district court err by denying Pena–Gutierrez a role adjustment for being a minor participant in the illegal smuggling activity. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

I.

On two separate days within a two-week period in early 1998, federal agents discovered illegal aliens secreted in various compartments of a car driven by Pena–Gutierrez across the California/Mexico border.

On January 25, 1998, Pena–Gutierrez drove a 1984 Buick station wagon into the United States from Mexico at the San Ysidro, California Port of Entry. U.S. Customs Inspector Kenneth Slaughter questioned Pena–Gutierrez at the port of entry's primary-inspection area. In response to this questioning, Pena–Gutierrez stated that he had recently purchased the Buick. Inspector Slaughter noticed, however, that the name on the vehicle registration did not match the name on Pena–Gutierrez's resident-alien card. Inspector Slaughter also found it suspicious that Pena–Gutierrez had only two keys on his key ring, because his "experience . . . is when we have two keys on the vehicle, there's either . . . narcotics or aliens in the vehicle." Based on these and other observations of Pena–Gutierrez's demeanor, Inspector Slaughter referred Pena–Gutierrez to the secondary-inspection lot.

There, U.S. Customs Inspector Barbara Thomas inspected the Buick. At the rear of the car, she "dropped the tailgate and then reached inside and pulled down the cover that's over the wheel well on the side of the car." Inside this side spare-tire compartment, Inspector Thomas found an Hispanic male, later identified as Macias–Limon, "kind of crawled up in a little ball and . . . all sweaty." Another Immigration officer then removed Macias–Limon from

the compartment, and INS agents questioned both Pena–Gutierrez and Macias–Limon.

In response to this questioning, Pena–Gutierrez stated that he did not know that Macias–Limon was hidden in the car, that he had never seen Macias–Limon before, and that he was receiving no monetary payment for transporting Macias–Limon. Macias–Limon stated that he was a citizen and national of Mexico, that he had been placed in the spare-tire compartment on a street in Tijuana, Mexico, that he was en route to Los Angeles to seek employment, and that no money was to be exchanged for his transport. After completing its interviews of the two men, the INS declined to prosecute Pena–Gutierrez. It later released Pena–Gutierrez and deported Macias–Limon to Mexico.

Just two weeks later, on February 10, 1998, Pena–Gutierrez drove a 1990 Ford Probe to the San Clemente, California border-patrol checkpoint. U.S. Border Patrol Agent Brandon Scott, who was on duty at the time, noticed that the car appeared heavily loaded in the back, and he motioned for Pena–Gutierrez to stop. Pena–Gutierrez did not pull over until his car was approximately ten feet past the spot that Agent Scott had indicated. Once he brought his car to a stop, Agent Scott approached, whereupon Pena–Gutierrez volunteered that he and his visible passenger, Ana Maria Hernandez–Rojas ("Hernandez–Rojas"), were United States citizens on their way to Los Angeles. Agent Scott observed, however, that Pena–Gutierrez spoke rapidly and did not make eye contact, and that Hernandez–Rojas was "sitting really stiff and rigid" and stared "straight ahead." On that basis, he referred the two to secondary inspection.

At secondary inspection, Pena–Gutierrez answered the questions of U.S. Border Patrol Agent Claudia Field, stating that he was a United States citizen but that he had no identification with him. Agent Field then asked Pena–Gutierrez if she could look inside the hatchback of his car. Pena–Gutierrez consented, left the Ford, inserted a key in the lock of the hatchback, and turned the key several times without successfully opening the hatchback. Meanwhile, another agent had asked Hernandez–Rojas to identify her citizenship and had determined that she was a Mexican citizen illegally in the United States. Upon this determination, the agents immediately arrested Pena–Gutierrez. Agent Field then opened the hatchback herself and discovered Alberto Bernal–Hernandez, Jose Bernal–Hernandez, and Jesus Michel–Lara inside. These three men stated that they were also Mexican citizens illegally in the United States.

After completing its investigation, the INS allowed Hernandez–Rojas and her son, Alberto Bernal–Hernandez, to return to Mexico voluntarily. The government decided to hold both Jose Bernal–Hernandez and Jesus Michel–Lara as material witnesses.

On April 15, 1998, the United States filed a four-count superseding indictment against Pena–Gutierrez in the Southern District of California. Count one charged bringing in an illegal alien, namely Macias–Limon, for the purpose of commercial advantage or private financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). Count two charged Pena–Gutierrez with bringing in Macias–Limon and failing to bring and present him to an appropriate immigration officer, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). Counts three and four charged Pena–Gutierrez with transportation of illegal aliens, namely Jose Bernal–Hernandez and Jesus Michel–Lara, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

During the ensuing two-day trial, the district court admitted into evidence, over Pena–Gutierrez's objection, an INS report that contained the statement Macias–Limon made to INS agents on January 25, 1998. Macias–Limon did not appear as a witness at trial. The district court also admitted over objection a diagram of the Buick station wagon that Pena–Gutierrez drove across the border on January 25, along with accompanying testimony by a

U.S. Customs inspector. This diagram demonstrated the location of the car's spare-tire compartment and how Macias–Limon was concealed inside it.

A jury found Pena–Gutierrez guilty on all four counts of the indictment, and, after refusing to grant a role adjustment under section 3B1.2 of the U.S. Sentencing Guidelines, the district court sentenced Pena–Gutierrez to sixty months in custody, ordered him to serve three years of supervised release, and required him to pay a $400.00 penalty assessment. This appeal followed.

## II.

After declining prosecution on the January 25, 1998 incident, the INS deported Macias–Limon to Mexico. Pena–Gutierrez contends that, because Macias–Limon was a potential defense witness, this act violated the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. Because Pena–Gutierrez has demonstrated neither governmental bad faith nor prejudicial conduct, we conclude that the district court did not err in denying his motion to dismiss counts one and two on this basis.[1] *See United States v. Dring*, 930 F.2d 687, 693 (9th Cir.1991) (holding that to establish compulsory process and due process violations by the deportation of an alien witness, "the defendant must make an initial showing that the Government acted in bad faith and that this conduct resulted in prejudice to the defendant's case." (citing *United States v. Valenzuela–Bernal*, 458 U.S. 858, 873, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982))).

To establish that the government acted in bad faith, Pena–Gutierrez must show either "that the Government departed from normal deportation procedures" or "that the Government deported [Macias–Limon] to gain an unfair tactical advantage over him at trial." *Id.* at 695. Pena–

Gutierrez has made no showing that the government departed from normal practice in deporting Macias–Limon. Nor can Pena–Gutierrez demonstrate that the government deported Macias–Limon to "gain an unfair tactical advantage over him at trial." *Id.; see also California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (finding no bad faith under the Due Process Clause when "[t]he record contains no allegation of official animus … or of a conscious effort to suppress exculpatory evidence"). When the government deported Macias–Limon, it had decided not to prosecute Pena–Gutierrez and had released him. Therefore, the government could not have been motivated by any perceived tactical advantage at trial. *Cf. United States v. Velarde–Gavarrete*, 975 F.2d 672, 675–76 (9th Cir.1992) (upholding a district court's finding that the INS did not act in bad faith under *Dring* when it deported several aliens after the DEA failed to charge any of the aliens within an INS-imposed forty-eight hour deadline, although the DEA later charged two of the aliens who were not deported). We thus find that Pena–Gutierrez has not made the requisite showing of bad faith.

Pena–Gutierrez has also failed to prove prejudice because Macias–Limon's proposed testimony, although material and possibly favorable, was "merely cumulative to the testimony of available witnesses." *Dring*, 930 F.2d at 693–94 (quoting *Valenzuela–Bernal*, 458 U.S. at 873, 102 S.Ct. 3440) (internal quotation marks omitted). According to Pena–Gutierrez, Macias–Limon would have "stated no money was to be exchanged for the transport." Because he was charged with bringing in an alien for profit, this information would have been helpful to Pena–Gutierrez's case. However, INS Inspector Anita Anderson testified to the same point: that Macias–Limon "stated that no money was to be

---

1. We review de novo the district court's decision to deny Pena–Gutierrez's motion to dismiss the indictment for failure to retain a witness. *See United States v. Armenta*, 69 F.3d 304, 306 (9th Cir.1995). We review the district court's underlying findings of fact for clear error. *See id.*

paid or exchanged for the vehicle transport." *See United States v. Tafollo–Cardenas,* 897 F.2d 976, 979 (9th Cir.1990) ("Vega's testimony would have been 'merely cumulative,' and we do not find that there was a reasonable likelihood that hearing the story a third time would have 'affected the judgment of the trier of fact.' ").[2]

### III.

The central question this case presents is one not previously answered by our court: when the government has the name and address of a foreign witness, but makes no effort to contact that witness in his native country, is the witness "unavailable" under Rule 804(a) of the Federal Rules of Evidence? We hold that he is not, but we find that the district court's ruling to the contrary was harmless error.

■■■■ Like many illegal aliens unsuccessfully smuggled into the United States, Macias–Limon was interviewed and then sent home across the border. The government had Macias–Limon's name and his address in Mexico. It made no attempt to contact him, however, and Macias–Limon did not appear as a witness at trial. Nevertheless, the district court admitted into evidence, over Pena–Gutierrez's objection, a report that INS Inspector Anita Anderson prepared during her interview with Macias–Limon. This hearsay report contained Macias–Limon's hearsay statement that he was a citizen and national of Mexico. *See* Fed.R.Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Pena–Gutierrez argues (i) that this hearsay-within-hearsay was inadmissible under the Federal Rules of Evidence, *see id.* 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule ....."); (ii) that its admission violated his rights under the Confrontation Clause of the Sixth Amendment; and (iii) that "[w]ithout the hearsay testimony ..., the government could not prove its case." Applying the appropriate standards of review,[3] we hold that the district court erred in admitting Macias–Limon's hearsay statement within Inspector Anderson's hearsay report; we assume, without deciding, that this error constituted a Confrontation Clause violation; and we conclude that the error was harmless beyond a reasonable doubt.

### A.

■■■■ The district court admitted Inspector Anderson's report under the recorded-recollection exception to the hearsay rule. *See* Fed.R.Evid. 803(5). In *United States v. Orozco,* 590 F.2d 789 (9th Cir.1979), however, we held that district

---

**2.** Pena–Gutierrez also advances new facts, arguing that Macias–Limon might have explained that Pena–Gutierrez did not place him in the van 'and was not involved in the smuggling. Pena–Gutierrez advances these facts, however, without meeting the Supreme Court's well-established procedural prerequisites. In *United States v. Valenzuela–Bernal,* the Supreme Court held that when "the criminal defendant ... advance[s] additional facts, either consistent with facts already known to the court or accompanied by a reasonable explanation for their inconsistency with such facts, with a view to persuading the court that the deported witness would have been material and favorable to his defense," this "explanation of materiality ... should be verified by an oath or affirmation of either the defendant or his attorney." *Valenzuela–Bernal,* 458 U.S. at 873, 102 S.Ct. 3440. Neither Pena–Gutierrez nor his attorney ever verified their allegations as to what Macias–Limon "might have explained" in his testimony, and thus they failed to demonstrate prejudice.

**3.** We review de novo whether the district court correctly construed the hearsay rule, *see United States v. Olafson,* 203 F.3d 560, 565 (9th Cir.), *amended by* 213 F.3d 435 (9th Cir.2000), and whether the Confrontation Clause was violated, *see United States v. Bowman,* 215 F.3d 951, 960 (9th Cir.2000). We review for an abuse of discretion the district court's decision to admit evidence under a hearsay exception, including its decision that Macias–Limon was unavailable. *See Olafson,* 203 F.3d at 565–66.

courts should admit such law-enforcement reports, if at all, only under the public-records exception contained in Federal Rule of Evidence 803(8). *See id.* at 793 ("While governmental functions could be included within the broad definition of 'business' in rule 803(6), such a result is obviated by rule 803(8) . . . ."); *see also United States v. Sims*, 617 F.2d 1371, 1377 (9th Cir.1980) (stating that "the plain language of Rule 803(8) makes it abundantly clear that it is the rule which covers reports made by law enforcement personnel"); *Orozco*, 590 F.2d at 793 ("The customs inspector is one of the 'law enforcement personnel' included in rule 803(8)."). Therefore, to decide whether the district court properly admitted this report, we must consider whether it falls within the public-records exception. We conclude that it does not.

▇▇▇▇ Rule 803(8) allows the admission of public records "setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel." Fed.R.Evid. 803(8)(B). As we have explained, "[i]n excluding 'matters observed by . . . law enforcement personnel' from the coverage of the exception," *Orozco*, 590 F.2d at 793, Congress "intended to [exclude] observations made by law enforcement officials at the scene of a crime or the apprehension of the accused and not 'records of routine, nonadversarial matters' made in a nonadversarial setting." *United States v. Wilmer*, 799 F.2d 495, 501 (9th Cir.1986) (quoting *Orozco*, 590 F.2d at 793); *see also* Fed.R.Evid. 803(8) advisory committee's note ("Ostensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.").

In this case, the questioning of Macias–Limon by INS Inspector Anderson took place in the INS Fraud Office soon after authorities stopped Pena–Gutierrez's car and found Macias–Limon hidden inside, and it took place before the INS decided what, if any, action to take regarding this incident. *See Wilmer*, 799 F.2d at 501. Moreover, Macias–Limon was not subjected to objective or scientific testing, or even the standardized administrative questioning asked of everyone at a border crossing. Inspector Anderson was conducting a criminal interrogation. *See Wigglesworth v. Oregon*, 49 F.3d 578, 580–81 (9th Cir. 1995) (noting that "the objective results of a routine test" would be admissible under the public-records exception while a report "dependent upon some subjective evaluation" would not); *United States v. Hernandez–Rojas*, 617 F.2d 533, 535 (9th Cir. 1980) (stating that "the subjective report made by a law enforcement official in an on-the-scene investigation . . . lack[s] sufficient guarantees of trustworthiness because [it is] made in an adversary setting [and is] likely to be used in litigation"). Therefore, we hold that the district court erred under Federal Rules of Evidence 802 and 803(8) in admitting into evidence "the on-the-scene investigative report of a crime by a[n INS] officer whose perceptions might be clouded and untrustworthy." *Wilmer*, 799 F.2d at 501.

### B.

▇▇▇▇ Even if we were to find the report itself admissible, the statement of the deported witness it contained was inadmissible hearsay. *See Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1045 (9th Cir.1999) (stating that for hearsay-within-hearsay to be admissible, "each layer of hearsay must satisfy an exception to the hearsay rule"). The district court admitted this statement after finding Macias–Limon "unavailable" under Rule 804(a)(5) of the Federal Rules of Evidence, *see* Fed. R.Evid. 804(a)(5), and although the district court did not specify which exception the

statement satisfied under Rule 804(b), *see id.* 804(b) (listing the types of hearsay that "are not excluded by the hearsay rule if the declarant is unavailable as a witness"), we have previously noted that a declarant's "statement to immigration officers regarding his citizenship and alienage was ... admissible under the hearsay exceptions for statements against interest and statements of personal or family history," *United States v. Olafson,* 203 F.3d 560, 565–66 (9th Cir.), *amended by* 213 F.3d 435 (9th Cir.2000); *see also* Fed.R.Evid. 804(b)(3) (statement-against-interest hearsay exception); *id.* 804(b)(4) (statement-of-personal-or-family-history hearsay exception).[4] Contrary to the district court's finding, we hold that Macias–Limon was not "unavailable" within the meaning of Rule 804(a)(5). *See id.* 804(a)(5) (" 'Unavailability as a witness' includes situations in which the declarant ... is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means."). Therefore, we conclude that the district court erred in admitting Macias–Limon's hearsay statement.[5]

In *United States v. Winn,* 767 F.2d 527 (9th Cir.1985), we faced this very issue: under what circumstances are Mexican citizens who have been deported by federal agents for illegally entering the country "unavailable" under Rule 804(a)? We held in *Winn* that "[a] witness is not 'unavailable' unless the prosecutor makes a good faith effort to obtain the witness's presence." *Id.* at 530; *accord Olafson,* 203 F.3d at 565; *Christian v. Rhode,* 41 F.3d 461, 467 (9th Cir.1994). "But '[t]he law does not require the doing of a futile act,' and the extent of the efforts the prosecu-

tor must make is a question of reasonableness." *Winn,* 767 F.2d at 530 (quoting *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)) (alteration in original); *accord Olafson,* 203 F.3d at 565; *see also Christian,* 41 F.3d at 467 ("The lengths to which a prosecutor must go to establish good faith is a question of reasonableness."). As we stated in *Winn,* when the government has "no addresses or any other information that would help locate" the deported aliens, "it [i]s reasonable for the government to make no effort to find the ... aliens." *Winn,* 767 F.2d at 530.

In this case, however, unlike in *Winn,* the government had Macias–Limon's address in Mexico. In addition, the government asserted no basis for believing that Macias–Limon would not respond to a request to return to the United States to testify. Although " '[g]ood faith' and 'reasonableness' are terms that demand fact-intensive, case-by-case analysis, not rigid rules," *Christian,* 41 F.3d at 467, the government's failure to make *any* effort to contact Macias–Limon when it had his address in hand was per se unreasonable.

This holding is not inconsistent with our recent decision in *United States v. Olafson.* *See Olafson,* 203 F.3d at 566 (holding that the district court did not abuse its discretion in finding that a deported alien was "unavailable" under *Winn* because he was "inadvertently returned to Mexico, ... beyond the subpoena power of the district court, and failed to respond to efforts to persuade [him] to return to the United States to testify"). In *Olafson,* we did not reach the issue we resolve here, because although the record was unclear as to whether the government had made any attempt to contact a deported witness deemed "unavailable," it was unnecessary

---

**4.** Pena–Gutierrez does not challenge the admissibility of Macias–Limon's statement under Rule 804(b).

**5.** Nor was Macias–Limon's statement admissible under any of the exceptions listed in Federal Rule of Evidence 803, which would apply "even though the declarant is available

as a witness," Fed.R.Evid. 803. *See United States v. Becerra,* 992 F.2d 960, 965 (9th Cir. 1993) ("We may affirm on any ground fairly supported by the record.") (quoting *United States v. Telink, Inc.,* 910 F.2d 598, 600 n. 1 (9th Cir.1990) (internal quotation marks omitted)).

to resolve this issue to decide Olafson's appeal. *See id.* at 566 n. 2; *cf. United States v. Medjuck,* 156 F.3d 916, 920 (9th Cir.1998) ("Here, the Canadian witnesses were unavailable for trial because they were beyond the subpoena power of the United States and refused voluntarily to attend."), *cert. denied,* 527 U.S. 1006, 119 S.Ct. 2343, 144 L.Ed.2d 239 (1999); *Christian,* 41 F.3d at 467 (finding that the prosecution's efforts were reasonable and that witnesses were "unavailable" under Rule 804 when "the prosecution asked the witnesses if they would come to the United States to testify at trial," and "they refused"); *United States v. Sines,* 761 F.2d 1434, 1441 (9th Cir.1985) (finding that a witness was "unavailable" under Rule 804 when, "after a series of contacts through various diplomatic channels, the Thai government had clearly indicated its unwillingness to permit [the witness] to leave Thailand to testify"). Under the circumstances of this case, we hold that the district court abused its discretion when it found that Macias–Limon was "unavailable" for purposes of Rule 804(a).

### C.

 Pena–Gutierrez argues that the district court's evidentiary error in admitting Macias–Limon's hearsay statement within Inspector Anderson's hearsay report amounted to a violation of the Confrontation Clause of the Sixth Amendment. We need not decide this question, however, because even assuming a Confrontation Clause violation here, we find that the district court's error was harmless beyond a reasonable doubt. *See United States v. Bowman,* 215 F.3d 951, 961 (9th Cir.2000) (noting that "[e]vidence erroneously admitted in violation of the Confrontation Clause must be shown harmless beyond a reasonable doubt"); *United States v. Magana–Olvera,* 917 F.2d 401, 409 (9th Cir.1990) (holding that for Confrontation Clause violations, "[r]eversal is not required if 'the error was harmless beyond a reasonable doubt.'" (quoting *Toolate v. Borg,* 828 F.2d 571, 575 (9th Cir.1987))).

 Whether a violation of the Confrontation Clause is harmless beyond a reasonable doubt "depends on a variety of factors, including whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony on material points, the extent of the cross-examination, and of course, the overall strength of the prosecution's case." *United States v. Mayfield,* 189 F.3d 895, 906 (9th Cir.1999) (quoting *United States v. Peterson,* 140 F.3d 819, 822 (9th Cir.1998)) (internal quotation marks omitted). As Pena–Gutierrez concedes, the only relevant evidence supplied by this inadmissible hearsay was Macias–Limon's concession of his Mexican citizenship. That is, for the government to convict Pena–Gutierrez on counts one and two of the indictment, it had to prove, *inter alia,* that Macias–Limon was an illegal alien, *see* 8 U.S.C. § 1324(a)(2)(B)(ii), (iii), and Macias–Limon's own statement that he was a citizen and national of Mexico certainly made the fact of his illegal alienage "more probable . . . than it would be without the evidence," Fed.R.Evid. 401.

There was sufficient evidence admitted during trial, however, from which the jury could find beyond a reasonable doubt that Macias–Limon was an illegal alien, without the benefit of this hearsay statement. In particular, it is undisputed that the INS removed Macias–Limon from the United States, a sanction reserved for aliens. *See* 8 U.S.C. § 1225; *id.* § 1227; *id.* § 1252(b)(5); *see also Mathews v. Diaz,* 426 U.S. 67, 80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) ("The exclusion of aliens and the reservation of the power to deport have no permissible counterpart in the Federal Government's power to regulate the conduct of its own citizenry." (footnotes omitted)); *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922) ("Jurisdiction in the executive to order deportation exists only if the person arrested is an alien."). Furthermore, the government offered uncontroverted evidence that Macias–Limon was without immigration papers and was transported

across the international border in the spare-tire compartment of Pena–Gutierrez's car, "kind of crawled up in a little ball and . . . all sweaty." If Macias–Limon had been a citizen of the United States or otherwise legally entering the country, he would not have been required to go through such contortions to cross the border. *See Winn,* 767 F.2d at 530. Finally, just over two weeks after being caught transporting Macias–Limon into the United States, federal agents again stopped Pena–Gutierrez near the California/Mexico border, and one of the men concealed in the car during this second incident testified at trial that he was a Mexican citizen. *See* Fed.R.Evid. 404(b); *United States v. Ayers,* 924 F.2d 1468, 1473 (9th Cir.1991) ("While most of the cases addressing other acts evidence, admitted pursuant to Rule 404(b), involve prior crimes or acts of misconduct, it is clear that evidence of subsequent crimes or acts of misconduct is admissible if it is relevant to an issue at trial."). Thus, because from the properly admitted evidence "a jury could confidently conclude that" Macias–Limon was an illegal alien, we hold that the district court's error was harmless beyond a reasonable doubt. *Magana–Olvera,* 917 F.2d at 409.

### IV.

 The district court also admitted into evidence a diagram of the 1984 Buick station wagon that Pena–Gutierrez drove into the United States from Mexico on January 25, 1998. This relatively crude diagram demonstrated how Macias–Limon was hidden inside the car's spare-tire compartment. Pena–Gutierrez argues that both the diagram and the accompanying testimony by U.S. Customs Inspector Barbara Thomas were irrelevant, *see* Fed. R.Evid. 401, and accordingly inadmissible, *see id.* 402. Specifically, he contends that knowledge was the only disputed issue; "[t]he condition of the illegal alien had nothing to do with knowledge"; and, therefore, the diagram depicting Macias–Limon's condition was not relevant evidence. However, as the advisory committee's note to Rule 401 of the Federal Rules of Evidence explains,

> [t]he fact to which the evidence is directed need not be in dispute. . . . Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding. Charts, photographs, views of real estate, murder weapons, and many other items of evidence fall in this category.

*Id.* 401 advisory committee's note; *see also Old Chief v. United States,* 519 U.S. 172, 179, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (endorsing strongly this aspect of the advisory committee's note).

In addition, to convict Pena–Gutierrez on counts one and two, the government had to prove that Macias–Limon was an illegal alien. *See* 8 U.S.C. § 1324(a)(2)(B)(ii), (iii). A diagram, along with explanatory testimony, demonstrating Macias–Limon's location in the spare-tire compartment of Pena–Gutierrez's Buick was certainly "a step on one evidentiary route to [this] ultimate fact." *Old Chief,* 519 U.S. at 179, 117 S.Ct. 644; *cf. United States v. Soto–Camacho,* 58 F.3d 408, 412 (9th Cir.1995) (holding that Border Patrol agents had reasonable suspicion for a border search when, *inter alia,* the agents thought that an illegal alien could have been concealed in the rear spare-tire compartment). Therefore, the district did not abuse its discretion in finding this evidence relevant.

Pena–Gutierrez also argues that the admission of the diagram and accompanying testimony violated Federal Rule of Evidence 403. He asserts that the district court erred in failing to perform an explicit balancing test and that the evidence's "probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. These arguments are without merit.

 We do not require explicit balancing on the record when the district

court rules on a Rule 403 objection. *See United States v. Robertson,* 15 F.3d 862, 873 (9th Cir.1994), *rev'd on other grounds,* 514 U.S. 669, 115 S.Ct. 1732, 131 L.Ed.2d 714 (1995), *opinion reinstated in relevant part,* 73 F.3d 249 (9th Cir.1996); *United States v. Ramirez–Jiminez,* 967 F.2d 1321, 1326 (9th Cir.1992). Because Pena–Gutierrez argued before the district court that admission of the diagram and Inspector Thomas's accompanying testimony would be unduly prejudicial, as in *Robertson,* we find that "the district court implicitly engaged in the requisite balancing, even though it did not explicitly state that it was doing so on the record." *Robertson,* 15 F.3d at 873.

 Moreover, considering the nature of evidence we have found unduly prejudicial in the past, the non-graphic diagram of a Buick station wagon and its companion testimony simply were not of a nature likely to unfairly prejudice the jury against Pena–Gutierrez. *See, e.g., United States v. Brady,* 579 F.2d 1121, 1129 (9th Cir. 1978) (noting that a crime-scene "photograph is inadmissible only when the picture is of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming the jury"); *see also United States v. Mende,* 43 F.3d 1298, 1302 (9th Cir.1995) ("Rule 403.. is 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.' "). Therefore, we hold that the district court did not abuse its discretion under Rule 403 by admitting into evidence this diagram and Inspector Thomas's explanatory testimony.

## V.

 Finally, Pena–Gutierrez challenges the sentence imposed by the district court. He argues that he was a minor participant in the alien-smuggling operation, and that the district court therefore erred under section 3B1.2 of the U.S. Sentencing Guidelines by not decreasing his offense level by two levels. *See* U.S.S.G. § 3B1.2(b) (1998) ("If the defendant was a minor participant in any criminal activity, decrease [the offense level] by 2 levels."). "[T]his court has consistently stated that a downward adjustment under section 3B1.2 is to be used infrequently and only in exceptional circumstances." *United States v. Hernandez–Franco,* 189 F.3d 1151, 1160 (9th Cir.1999) (quoting *United States v. Davis,* 36 F.3d 1424, 1436 (9th Cir.1994)) (internal quotation marks omitted), *cert. denied,* 120 S.Ct. 2203 (2000). "The defendant has the burden of proving by a preponderance of the evidence that he is entitled to a downward adjustment based on his role in the offense." *United States v. Ladum,* 141 F.3d 1328, 1348 (9th Cir.1998). The district court's determination that the defendant was not a minor participant in the offense is a factual determination that we review for clear error. *See United States v. Duran,* 189 F.3d 1071, 1088 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1706, 146 L.Ed.2d 509 (2000).

"The Guidelines define a 'minor participant' as 'any participant who is less culpable than most other participants, but whose role could not be described as minimal.' " *Id.* (quoting U.S.S.G. § 3B1.2, comment. (n.3) (1998)). "We have interpreted this definition to mean that a minor role adjustment is warranted only if the defendant is 'substantially' less culpable than his co-participants." *Id.* at 1089. Moreover, "[t]he decision whether to apply a minor role adjustment 'involves a determination that is heavily dependent upon the facts of the particular case.' " *Id.* (quoting U.S.S.G. § 3B1.2, comment. (backg'd.)).

Pena–Gutierrez did not simply provide the means of transportation. Rather, he was convicted of smuggling illegal aliens into the United States on two separate occasions within a sixteen-day period, and of receiving compensation for his services. *See Davis,* 36 F.3d at 1436–37 ("[W]e have denied downward adjustments to defendants who were couriers where some *additional* factor showing that they were not a minor or minimal participant existed."); *United States v. Pinkney,* 15 F.3d 825, 828

(9th Cir.1994) (finding that the defendant was not a minor participant when he "drove the getaway car, transported the checks to his home, and intended to benefit from cashing them"). As the district court found, Pena–Gutierrez "provided a vital link in the [alien-smuggling] operation." *See Duran,* 189 F.3d at 1089 (affirming a district court's finding that a defendant "was not a minor participant because his participation 'was integral to the successful completion of the drug transaction.'"). Furthermore, "the mere fact that [Pena–Gutierrez] was to transport the aliens north does not entitle him to a minor role adjustment." *Hernandez–Franco,* 189 F.3d at 1160. Therefore, we find that the district court did not clearly err when it found that Pena–Gutierrez was not entitled to a two-level downward adjustment for being a minor participant in the offense.

## VI.

For the foregoing reasons, Pena–Gutierrez's conviction and sentence are AFFIRMED.