UNITED STATES of America, Plaintiff–Appellee,

v.

Isaias HERNANDEZ, aka Guerillo; Juan Miguel Valdez; Urbano Ramirez Lucatero, aka Urbano Lucatero Ramirez; Mario Anguiano Chavez, aka Mario Chavez Anguiano, Defendants–Appellants.

Nos. 99–50717, 99–50718, 99–50743, 99–50758.

D.C. No. CR–97–01233–JSL.

United States Court of Appeals, Ninth Circuit.

Submitted April 2, 2001.*

Argued and Submitted April 2, 2001.

Decided April 20, 2001.

---

* The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App. P. 34(a)(2).

amine in violation of 21 U.S.C. § 843(a)(6). Mario Anguiano Chavez ("Anguiano Chavez") appeals his guilty plea conviction for conspiracy to manufacture, distribute, or possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1). Because the parties are familiar with the factual and procedural history of this case, we do not recount it here except as necessary to explain our decision. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

*Hernandez*

■ 1. Hernandez was sentenced based on the 47 kilograms of methamphetamine and methamphetamine solution found in the Acton laboratory. This was a finding by the judge under the preponderance of the evidence standard. Hernandez first contends that this is contrary to the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that a fact that increases the prescribed statutory maximum penalty to which a defendant is exposed must be submitted to a jury and proved beyond a reasonable doubt.

Under 21 U.S.C. § 841(b)(1)(C), the statutory maximum for offenses involving 500 grams (.5 kilogram) or more of a mixture of substance containing a detectable amount of methamphetamine is life imprisonment. Hernandez admitted that he transported five pounds (2.27 kilograms) of methamphetamine immediately prior to his arrest. Thus, Hernandez's admission conclusively established that the quantity of methamphetamine was over 500 grams for which the statutory maximum is life imprisonment. Hernandez's sentence of 108 months was well within the statutory maxi-

Before HUG, DUHÉ,** and TALLMAN, Circuit Judges.

MEMORANDUM ***

Isaias Hernandez ("Hernandez"), Juan Miguel Valdez ("Valdez"), and Urbano Ramirez Lucatero ("Lucatero") appeal their sentences following their pleas of guilty to conspiracy to manufacture, distribute, or possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and to possession of equipment, chemicals, products, and materials which may be used to manufacture methamphet-

---

** The Honorable John M. Duhé, Jr., Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

mum. Thus, the requirements of *Apprendi* were fulfilled.

■ Hernandez also argues that the maximum sentence for *Apprendi* purposes should be defined by the Sentencing Guidelines maximum and not by the statutory maximum. We reject this argument. *Apprendi* dealt with the consideration of facts which increase the penalty for a crime beyond the prescribed statutory maximum. *See Apprendi,* 120 S.Ct. at 2362–63, 120 S.Ct. 2348; *United States v. Garcia-Sanchez,* 238 F.3d 1200 (9th Cir. 2001) (applying statutory maximum).

■ 2. Hernandez contends that the district court erred when his base offense level was determined by the entire amount of methamphetamine and methamphetamine solution found at the Acton laboratory on October 17, 1997 and not just the amount found in his possession. Hernandez was involved in a jointly undertaken criminal activity. As a result, he is accountable for "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *United States v. Whitecotton,* 142 F.3d 1194, 1197–98 (9th Cir. 1998) (citing U.S.S.G. § 1B1.3, cmt. n. 2).

Hernandez played an active role in the conspiracy. He picked up and delivered most of the laboratory equipment, chemical supplies, and precursor chemicals for the methamphetamine production. Hernandez was aware that methamphetamine was to be manufactured with the chemicals and equipment he delivered. Although Hernandez was never paid for his work, other than receiving gas money, he was promised payment once the Anguiano organization distributed the methamphetamine. Additionally, Hernandez was present at the Acton lab on the day the methamphetamine was produced; on that day, Hernandez picked up freshly cooked methamphetamine. Based on these facts, we conclude that the district court did not clearly err, *see United States v. Fox,* 189 F.3d 1115, 1119 (9th Cir.1999), when it determined that the 47 kilograms of methamphetamine was reasonably foreseeable to Hernandez.

■ Hernandez also contends that the court failed to make specific factual findings in support of its conclusion that his base offense level was 38. At the sentencing hearing, the district court adopted the government's position after reviewing all the documents submitted, including the presentence report and the addendum, and after considering each party's arguments. The presentence report and the addendum offered factual support for its conclusion that the total quantity of drugs in the conspiracy should be used in calculating Hernandez's offense level. Hernandez also had an opportunity to present evidence supporting his position. Thus, specific findings were not necessary. *See United States v. Leung,* 35 F.3d 1402, 1406 (9th Cir.1994).

*Valdez*

■ 1. Valdez argues that the district court erred under U.S.S.G. § 3B1.2(b) by denying him a two-level downward adjustment for his minor role in the methamphetamine conspiracy because he was merely a cook at the methamphetamine laboratory. Valdez has failed to demonstrate by a preponderance of the evidence that he is substantially less culpable than the average co-participant. *See United States v. Ladum,* 141 F.3d 1328, 1348 (9th Cir.1998). On September 5, 1997 and September 6, 1997, Valdez cooked the methamphetamine at the Apple Valley laboratory. This laboratory produced more methamphetamine than the other laboratories operated by the Anguiano organization. Although Valdez was not in charge of the production and was only involved for a short period of time, he was respon-

sible for the production of 90.7 kilograms of finished methamphetamine. Based on the precursor chemicals present at the Apple Valley laboratory, it was capable of producing at least another 45.36 kilograms. Thus, the district court did not clearly err in concluding that Valdez was not a minor participant for purposes of U.S.S.G. § 3B1.2. *United States v. Pena–Gutierrez*, 222 F.3d 1080, 1091 (9th Cir. 2000).

*Lucatero*

■ 1. Lucatero argues that the district court erred in imposing a two-level increase under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon. We disagree. Lucatero may be sentenced not only on the basis of his own conduct but also on the basis of the "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by [him]." U.S.S.G. § 1B1.3, cmt. note 1. The weapon, a loaded, semi-automatic pistol, was found on the bookshelf in the rear bedroom where Lucatero and a co-conspirator were sleeping. Lucatero had been manufacturing methamphetamine at this residence for many hours prior to his arrest. Thus, it was reasonably foreseeable to Lucatero that his co-conspirators would possess weapons at the laboratory where they were producing large amounts of illegal narcotics. *See United States v. Garcia*, 909 F.2d 1346 (9th Cir.1990) (upholding district court's application of firearm enhancement because defendant should have reasonably foreseen that co-conspirator would possess a gun during the execution of a major drug sale). Accordingly, we conclude that the district court did not clearly err in imposing the two-level increase under U.S.S.G. § 2D1.1(b)(1). *United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir.1997).

■ 2. Lucatero also contends that the district court erred in denying a two-level downward adjustment under U.S.S.G. § 3B1.2(b) because he was a minor participant in the criminal activity. Specifically, Lucatero contends that the district court's conclusion that he was a cook was based exclusively upon the hearsay statements of Virgin–Chavez. Virgin–Chavez identified Lucatero as "Comi" and stated that he had been informed by Anguiano family members that Lucatero was a methamphetamine "cook" for the Anguiano organization. The district court did not err in relying on the hearsay statements of Virgin–Chavez to establish that Lucatero was a cook because the statements were corroborated by extrinsic evidence. *See United States v. Ponce*, 51 F.3d 820, 828 (9th Cir.1995) (per curiam). Law enforcement officers observed Lucatero at the Apple Valley laboratory several times during the September methamphetamine production. He was seen carrying ingredients necessary for methamphetamine production including Freon cans and ice. He was also observed dumping the contents of ice bags into two vats. Additionally, a wiretap revealed that "Comi" was the cook.

■ Lucatero has also failed to demonstrate by a preponderance of the evidence that he is substantially less culpable than the average co-participant. *See Ladum*, 141 F.3d at 1348. Lucatero was a methamphetamine cook at the Apple Valley laboratory where the Anguiano organization produced 90.7 kilograms of finished methamphetamine; this laboratory produced more methamphetamine than any other laboratory operated by the organization. The laboratory was capable of producing at least another 45.36 kilograms based on the precursor chemicals found there. Thus, we conclude that the district court did not clearly err in finding that Lucatero

was not a minor participant for purposes of U.S.S.G. § 3B1.2. *Pena–Gutierrez,* 222 F.3d at 1091.

*Anguiano–Chavez*

■ 1. Anguiano Chavez argues that the district court violated Federal Rule of Criminal Procedure 11 because during the plea colloquy the court failed adequately to inform him of the exact nature of the charge against him and failed to make any reference to 21 U.S.C. § 841(a)(1). After reviewing the record de novo, *see United States v. Odedo,* 154 F.3d 937, 940 (9th Cir.1998), we must disagree.

The district court explained the nature and elements of the charge to which the plea was offered, *see* Fed.R.Crim.P. 11(c)(1), and informed Anguiano Chavez of the factual basis for the charge. Anguiano Chavez suggests that the district court should have advised him of one additional element under 21 U.S.C. § 846: performing one or more acts to further that illegal purpose. However, proof of an overt act is no longer an element of the offense under 21 U.S.C. § 846. *See Cazares,* 121 F.3d at 1246 (stating that proof of an overt act is not required where the charge is for a violation of 18 U.S.C. § 846).

Anguiano Chavez also contends that the district court failed to inform him of the nature of the § 841(a)(1) charges or reference § 841(a)(1). Anguiano Chavez was in fact indicted for, convicted of, and sentenced for conspiracy to manufacture, possess with intent to distribute, and distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Even so, the district court twice informed Anguiano Chavez that the objects of the conspiracy charge under § 846 were to manufacture, possess with intent to distribute, and distribute methamphetamine. Therefore, we conclude that the district court was not required to discuss the elements of a § 841(a)(1) violation or reference that section during the colloquy.

■ Even assuming arguendo that the district court erred in failing to specifically reference § 841(a)(1), the error was harmless. The district court informed Anguiano Chavez of the nature and elements of the conspiracy charge for which he was convicted, twice recited the objects of the conspiracy charge, recited the factual basis underlying the crime, and determined that he understood the charge.

■ 2. Next, Anguiano Chavez contends that his fundamental right to effective assistance of counsel, as guaranteed by the Sixth Amendment, was violated by his first attorney and by the district court when it failed sua sponte to hold a hearing upon learning of counsel's alleged ineffectiveness. "Ineffective assistance claims ... are ordinarily left for collateral habeas proceedings due to the lack of a sufficient evidentiary record as to what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Sager,* 227 F.3d 1138, 1149 (9th Cir.2000) (internal quotations omitted). Ineffective assistance claims are only reviewed on direct appeal where the record is "sufficiently developed to permit review and determination of the issue, or the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *United States v. Rivera–Sanchez,* 222 F.3d 1057, 1060 (9th Cir.2000) (internal quotations omitted).

Neither of these exceptions apply to this case. First, the record is not sufficiently developed to justify consideration of the issue on direct appeal. Second, the record does not support Anguiano Chavez's argument that his legal representation was so inadequate that it obviously denied him his Sixth Amendment right to counsel. Accordingly, we decline to consider Anguiano Chavez's ineffective assistance of counsel

claim on direct appeal; the claim is more properly considered in a collateral habeas proceeding.

■ Anguiano Chavez also contends that when the district court first became aware that Anguiano Chavez was dissatisfied with his attorney's representation the court should have held an evidentiary hearing sua sponte to look into the breakdown of their attorney-client relationship. We have "recognized that if it was evident during the trial that defendant's legal representation was so inadequate as obviously to deny him his Sixth Amendment right to counsel, or to deny him a fair trial in the due process sense, the failure of the trial court to take note sua sponte of the problem might constitute plain error which may be considered on direct appeal." *United States v. Kazni,* 576 F.2d 238, 242 (9th Cir.1978); *see United States v. Laughlin,* 933 F.2d 786, 789 n. 1 (9th Cir.1991). The record does not provide a basis for us to rule upon Anguiano Chavez's allegations as there is nothing in the record to indicate that the legal representation by Mr. Stanley, an attorney that Anguiano Chavez twice retained to represent him, was so inadequate as to require sua sponte action by the district court.

AFFIRM