NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 17 2015

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50044 |
| Plaintiff - Appellee, | D.C. No. 3:12-cr-03614-JAH-1 |
| v. | |
| JESUS MANUEL RIVERA-PAREDES, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted May 6, 2015
Pasadena, California

Before: FISHER, BEA, and FRIEDLAND, Circuit Judges.

Jesus Manuel Rivera-Paredes appeals from his judgment of conviction

following a jury trial for three counts of attempted bringing in of illegal aliens for

financial gain and one count of failure to heave to. Although we are troubled by

the sparse records of the government's interviews of deported witnesses, Rivera-

Paredes does not challenge the district court's denial of an evidentiary hearing to

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

further develop the record regarding those interviews. We therefore take the record as we find it, and we affirm.

## I.    Deported Witnesses.

Rivera-Paredes first appeals the district court's denial of his motion to dismiss the indictment on the grounds that the government violated his due process and compulsory process rights by deporting sixteen witnesses who had exculpatory information. We review de novo the district court's denial of a motion to dismiss the indictment on account of the prosecution's failure to retain witnesses. *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1085 n.1 (9th Cir. 2000). To prevail, Rivera-Paredes must demonstrate that the government acted in bad faith— specifically, that it deported the witnesses despite having "information suggesting that [they] could offer exculpatory evidence"—and that the deportations prejudiced his case. *See United States v. Leal-Del Carmen*, 697 F.3d 964, 969-70 (9th Cir. 2012).

The scant record in this case frustrates our ability to evaluate whether the witnesses' non-identifications tended to exculpate Rivera-Paredes, and thus whether the government acted in bad faith. No audio or video recordings were made, and all but one of the agents stated that they did not take notes, did not recall whether they took notes, or could not find any notes. Only one agent specifically averred that none of the individuals he interviewed (of which there were four) were

2

able to identify the driver. The other agents merely implied that those they interviewed could not identify the driver—by declaring that they had asked "whether the alien could identify the driver of the boat," and that, "[i]f the alien answered yes," the agent "would have recorded that information for consideration of retaining the alien as a material witness." A photo line-up appears in the record, and one of the retained witnesses testified that he was shown the line-up, but it is unclear whether the line-up was shown to the deported witnesses. The government asserts that it was not, but Rivera-Paredes points to parts of the record suggesting the opposite.

A non-identification is potentially exculpatory, depending on the content of the question and answer. For example, if one of the deported passengers told an agent that he sat near the driver and got a good look at him, but also said that the driver was not among those in a photo line-up containing Rivera-Paredes, those statements would have been exculpatory, but also perfectly consistent with the agents' descriptions of the interviews. Alternatively, the deported alien might have been unable to identify the driver because he never saw the driver, which would be neutral information.

This case brings into sharp relief that a defendant's ability to demonstrate bad faith in connection with a witness deportation may depend on government records describing interview questions and answers in enough detail that any

3

exculpatory responses may be identified as such. Because the government possesses the information needed to demonstrate its own bad faith, the risk of gamesmanship is obvious. Spotty or ambiguous records like those here might suggest bad faith. One way for a district court to address this concern would be to grant a defendant's request for an evidentiary hearing to clarify ambiguous government records.

We note, however, that the interviews here occurred approximately two months before we emphasized in *Leal-Del Carmen* that the government has an obligation to refrain from deporting witnesses with potentially exculpatory testimony. It is also relevant that Rivera-Paredes did move for an evidentiary hearing in the district court to try to determine the significance of the deported witnesses' non-identifications. The court denied that motion, and Rivera-Paredes has not appealed that denial. He instead attempts to meet his burden on the basis of the current record, which he cannot do because the record offers no indication that the deported witnesses' non-identifications were of the exculpatory variety, and there is therefore no evidence that the government acted in bad faith. *See Leal-Del Carmen*, 697 F.3d at 969-70. In addition, any prejudice to Rivera-Paredes was substantially diminished by a stipulation at trial that the deported witnesses could not identify the driver of the boat. Accordingly, we affirm the denial of the motion to dismiss the indictment.

4

## II.     Remaining Claims.

Rivera-Paredes contends that the district court violated his rights under the Confrontation Clause and abused its discretion in its application of the hearsay rules when it admitted deposition testimony at trial from two of the material witnesses based on a finding that they were unavailable.  The witnesses were properly found to be unavailable because the prosecution made reasonable efforts to secure their attendance.  *See United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086 n.3, 1087-89 (9th Cir. 2000).  In addition to promising to pay for the witnesses' travel expenses and serving them both with parole letters to enable their return, the government reasonably relied on the representations of the material witnesses' attorney, who promised on the record to stay in contact with them.

Rivera-Paredes also contends that the district court abused its discretion by excluding evidence of the material witnesses' criminal and immigration histories. We disagree.  It was not illogical or implausible for the district court to conclude that, in the absence of context, the probative value of the evidence would be substantially outweighed by the risk of "unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403; *see United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

Finally, Rivera-Paredes argues that the district court abused its discretion when it denied an adverse-inference jury instruction regarding the government's

5

destruction of the passengers' life vests. When considering the appropriateness of such an instruction, "[c]ourts must balance the quality of the Government's conduct against the degree of prejudice to the accused." *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013). Contrary to Rivera-Paredes's contention, the district court did not fail to analyze the quality of the government's conduct. Among other things, the district court noted that "the agents removed or discarded the [life vests] on the day of the arrest prior to the request for preservation [and] prior to the government's promise to maintain all evidence and the court's order." The court further observed that the agents disposed of the vests "in the ordinary sense . . . and scheme of things . . . and not to hide evidence from the defendant." As to the prejudice analysis, the record supports the district court's conclusion that Rivera-Paredes was sufficiently able, even without the physical life vests, to rebut the prosecution's theory that he was one of the only people on the boat without a life vest. The district court's decision to deny the instruction was not illogical, implausible, or unsupported. *See Hinkson*, 585 F.3d at 1251.

**AFFIRMED.**